

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-22-2008

# USA v. Hawkins

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-5094

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Hawkins" (2008). 2008 Decisions. Paper 1159.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1159

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 06-5094

UNITED STATES OF AMERICA

v.

HOWARD HAWKINS
a/k/a
MARK MCLENDON

Howard Hawkins,

Appellant

On Appeal from the United States District Court
for the Western District of Pennsylvania
District Court No. 05-cr-00006
District Judge: The Honorable Gary L. Lancaster

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 20, 2008

Before: SMITH and NYGAARD, *Circuit Judges*,
and STAFFORD, *District Judge**

(Filed: May 22, 2008)

OPINION

---

*The Honorable William H. Stafford, Jr., Senior District Judge of the Northern District of Florida, sitting by designation.

SMITH, *Circuit Judge*.

Howard Hawkins appeals from a criminal conviction and sentence entered by the United States District Court for the Western District of Pennsylvania. For the reasons below, we will affirm the conviction and sentence. The District Court for the Western District of Pennsylvania had subject matter jurisdiction over the action pursuant to 18 U.S.C. § 3231, and we have appellate jurisdiction pursuant to 28 U.S.C. § 1291.

I.

At approximately 3:30 a.m. on January 4, 2004, the Pittsburgh Police Department received a report of gunshots being fired into a residence at 918 California Avenue. Within a few minutes, Officer Richard Zett arrived at this location, where he observed eight .40 caliber shell casings on the ground. While Zett was collecting the casings, a witness named Thomas Gorgone approached him. Gorgone told Zett that minutes earlier he had been retrieving mail from a nearby post office box when he heard gunshots. Gorgone looked outside and observed a man running away from the area in front of 918 California Avenue. According to Gorgone, the man then entered the front passenger side of a red SUV. Zett relayed a description of the man and the vehicle to other officers by radio and told them that the man might be armed with a .40 caliber firearm.

Two other officers were also responding to the report of gunshots when they heard Zett's radio dispatch. Shortly thereafter, they saw a red Dodge Durango driving in the

2

area and pulled it over. Hawkins was in the front passenger seat. Jody Pallatto,[1] who lived with Hawkins at the time, was in the driver's seat. Aaron Elazer,[2] Pallatto's brother, was in the back seat. The officers ordered the three individuals to show their hands and then to exit the vehicle. After the individuals complied, other officers arriving at the scene handcuffed them and placed them in separate police cars.

Officer Douglas, one of the two officers who stopped the Durango, testified at trial that he returned to the Durango after the three individuals had been removed. With the aid of his flashlight, he observed part of a .40 caliber Smith & Wesson handgun sticking out from under the front seat. Douglas examined the gun and found that it was loaded with one round in the chamber and six in the magazine, which can hold up to ten rounds. Under the passenger seat, he found an empty magazine that was identical to the one in the gun. A sheriff's department unit that arrived at the scene illuminated the rear of the vehicle and discovered another firearm. When Zett and Gorgone arrived at the scene, Gorgone identified the Durango as the same vehicle that he had seen earlier. Although Gorgone could not confirm that Hawkins was the same man that he saw earlier, Hawkins' appearance and clothing were consistent with the description that Gorgone had provided.

A grand jury charged Hawkins with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). The District Court denied Hawkins' motion to

---

[1] "Pallatto" is the spelling that she provided when testifying. Her name also appears as "Paletto" and "Pallato" in the record.

[2] His name also appears as "Elazor" in the record.

3

suppress evidence of the .40 caliber handgun. *See United States v. Hawkins*, No. 05-cr-06, 2005 U.S. Dist. LEXIS 37508, 2005 WL 3560660 (W.D. Pa. Dec. 29, 2005). It also denied Hawkins' motion to suppress evidence that someone fired shots into the building at 918 California Avenue. *See United States v. Hawkins*, No. 05-cr-06, 2006 U.S. Dist. LEXIS 40569, 2006 WL 1699437 (W.D. Pa. Jun. 19, 2006). The parties agreed to stipulate to several facts, including the fact that the eight casings found at 918 California Avenue matched the .40 caliber firearm charged in the indictment.

Jody Pallatto, who was the licensed owner of the .40 caliber gun and had pled guilty to aiding and abetting Hawkins' possession of it, testified at trial about the night of the incident. She said that Hawkins asked her to stop the Durango at a location near 918 California Avenue on a parallel street. Hawkins and Elazer left the stopped vehicle, while Pallatto fell asleep in the driver's seat. According to Pallatto, Elazer returned to the vehicle alone, climbed into the back, woke her up, and instructed her to drive up the street to pick up Hawkins. Shortly after Pallatto and Elazer picked up Hawkins, the police pulled over the Durango. Pallatto testified that she had not heard gunfire or seen either Hawkins or Elazer in actual possession of the gun at any time that night.

The jury returned a verdict of guilty on the § 922(g)(1) charge on July 12, 2006. The District Court denied Hawkins' motion for a judgment of acquittal notwithstanding the verdict pursuant to FED. R. CRIM. P. 29(c)(1). Over Hawkins' objection, the District Court classified him as an Armed Career Criminal and sentenced him to a term of

4

imprisonment of 180 months pursuant to 18 U.S.C. § 924(e)(1). Hawkins filed a timely notice of appeal. On appeal, he argues that: (1) the evidence was insufficient to prove that he possessed the .40 caliber firearm; (2) the search of the vehicle and detention of its occupants violated the Fourth Amendment; (3) 18 U.S.C. § 922(g) violates the Commerce Clause either on its face or as applied; and (4) the use of one of his prior convictions to enhance his sentence violated the Fifth and Sixth Amendments.

## II.

One of the elements of a § 922(g) violation is the knowing possession of a firearm. Because the Government did not contend that Hawkins actually possessed the .40 caliber firearm, the only question for the jury was whether he constructively possessed it. Constructive possession exists when "[a] person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing . . . ." *United States v. Blackston*, 940 F.2d 877, 883 (3d Cir. 1991). Hawkins says that the evidence was insufficient not only to establish that he knew where the gun was, but also to prove that he could exercise "dominion and control" over it.

When reviewing a denial of a post-conviction Rule 29 motion, we can overrule the jury's verdict "only if no reasonable juror could accept the evidence as sufficient to support the conclusion of the defendant's guilt beyond a reasonable doubt." *United States v. Coleman*, 811 F.2d 804, 807 (3d Cir. 1987). Applying this deferential standard, we conclude that the evidence was sufficient to support the jury's finding of constructive

5

possession.  Gorgone's testimony indicated that a man fitting Hawkins' (but not Elazer's) physical description was connected with the time and location of the shots and with the Durango.  The parties' stipulation linked the shells found at 918 California Avenue with the gun found under the front seat of the Durango.  Pallatto testified that Elazer was in the back seat when he woke her up, and Detective Joseph Bielevicz testified that he had examined the vehicle and concluded that it was not possible to pass an item from the back under either of the front seats.  Hawkins points that Pallatto did not testify about who placed the gun under the front seat.  Therefore, he argues, the evidence allows for the possibility that Elazer possessed and shot the gun without Hawkins' knowledge, entered the front of the Durango while Pallatto was asleep, placed the gun under the front seat, and then entered the back seat before waking Pallatto.  Even assuming *arguendo* that this interpretation of the evidence was possible, the evidence was nonetheless sufficient to allow a reasonable juror to find beyond a reasonable doubt that Hawkins knew that the gun was present and had dominion and control over it.

III.

Although Hawkins concedes that the police had reasonable suspicion to stop the Durango under *Terry v. Ohio*, 392 U.S. 1 (1968), he argues that they violated the Fourth Amendment by searching the vehicle and detaining its occupants.  He claims that the District Court therefore erred in denying his motion to suppress the firearm.  We review for clear error the District Court's factual findings and review *de novo* its application of

the law to the facts. *United States v. Williams*, 413 F.3d 347, 351 (3d Cir. 2005).

Although the officers ordered the three individuals to exit the Durango, handcuffed them, and placed them in separate police cars during the vehicle search, these actions did not convert the *Terry* stop into an arrest. When police officers conduct a *Terry* stop, "they may take such steps as are 'reasonably necessary to protect their personal safety and to maintain the status quo.'" *United States v. Edwards*, 53 F.3d 616, 619 (3d Cir. 1995) (quoting *United States v. Hensley*, 469 U.S. 221, 235 (1985)). When considering whether a *Terry* stop has escalated into an arrest, "the reasonableness of the intrusion is the touchstone, balancing the need of law enforcement officials against the burden on the affected citizens and considering the relation of the policeman's actions to his reason for stopping the suspect." *Baker v. Monroe Twp.*, 50 F.3d 1186, 1192 (3d Cir. 1995). Moreover, "[t]here is no per se rule that pointing guns at people, or handcuffing them, constitutes an arrest." *Id.* at 1193. In this case, the police had reason to believe not only that the people in the Durango were armed, but also that at least one of them had fired a weapon into a residence only minutes earlier. Under these circumstances, the police did not exceed *Terry*'s limitations by handcuffing the individuals and placing them in separate police cars while they searched the vehicle.

Also, the search of the vehicle did not violate the Fourth Amendment. We have held that an officer conducting a *Terry* stop "may pat down the occupants of the vehicle and conduct a search of the passenger compartment, if he has a reasonable suspicion that

the occupants might be armed and dangerous." *United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2004) (citing *Michigan v. Long*, 463 U.S. 1032, 1049–50 (1983)). The fact that the three individuals were handcuffed as part of the *Terry* stop did not eliminate the justification for a search of the passenger compartment. As the Supreme Court has recognized, after the completion of a *Terry* stop, the detained individual "will be permitted to reenter his automobile, and he will then have access to any weapons inside." *Michigan v. Long*, 463 U.S. 1032, 1052 (1983). Given the circumstances, it was reasonable for the officers to look under the front seats as part of the *Terry* stop.

IV.

Hawkins argues that § 922(g)(1) violates the Commerce Clause either on its face or as applied. We rejected arguments identical to those that Hawkins raises here in *United States v. Singletary*, 268 F.3d 196 (3d Cir. 2001), and *United States v. Shambry*, 392 F.3d 631 (3d Cir. 2004). Hawkins acknowledges that we are bound by these decisions, but raises the issue on appeal in order to preserve his constitutional challenge for possible *en banc* or Supreme Court review. Accordingly, we need not address it here.

V.

Finally, Hawkins objects to the District Court's imposition of a 15-year mandatory minimum sentence pursuant to 18 U.S.C. § 924(e). He argues that this sentence, which exceeds the statutory maximum that would otherwise apply, violated the Fifth and Sixth Amendments because it depended on his prior conviction for criminal conspiracy to

8

possess with intent to deliver cocaine base.

In *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), the Supreme Court held that prior convictions that increase the statutory maximum for an offense need not be proven beyond a reasonable doubt. In *Apprendi v. New Jersey*, 530 U.S. 466 (2000), the Court held that a fact which enhances a sentence above the statutory maximum must be pled in the indictment, submitted to a jury, and proven beyond a reasonable doubt. *Apprendi* left *Almendarez-Torres* intact by recognizing that prior convictions are an exception to the *Apprendi* rule. *Apprendi*, 530 U.S. at 489–90. We held that *Almendarez-Torres* is still good law in *United States v. Coleman*, 451 F.3d 154, 160 (3d Cir. 2006).

Hawkins argues that his conviction for criminal conspiracy to possess with intent to deliver cocaine base does not fall within *Apprendi*'s exception for prior convictions. A "serious drug offense" is relevant for purposes of § 924(e) if it is "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance." 18 U.S.C. § 924(e)(2)(A)(ii). Hawkins argues that possession with intent to *deliver* differs from possession with intent to *distribute*, and that a jury determination was therefore necessary. Hawkins provides no reasoning and cites no case law in support of this distinction between delivery and distribution, and we see no reason to require that this question be submitted to a jury.

\*\*\*\*

For the reasons above, we will affirm the judgment of the District Court.

9