586 A.2d 489

**THIELE, INC. and Pennsylvania National Mutual Casualty Company and Westmoreland Casualty, Petitioners,**

**v.**

**WORKMEN'S COMPENSATION APPEAL BOARD (YOUNKERS), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 9, 1990.

Decided Jan. 25, 1991.

Edward D. Klym, Stushel, Klym & Olszewski, Pittsburgh, for petitioners.

Robert G. Rose, with him, James C. Munro, II, Spence, Custer, Saylor, Wolfe & Rose, Johnstown, for respondent, Pennsylvania Nat. Mut. Cas. Co.

Before COLINS and KELLEY, JJ., and BLATT, Senior Judge.

BLATT, Senior Judge.

Thiele, Inc. (employer) and its insurer, the Westmoreland Casualty Company (Westmoreland), appeal here from an order of the Workmen's Compensation Appeal Board (Board) which affirmed a referee's decision which held the employer and Westmoreland liable for benefits payable to Thomas M. Younkers (claimant), and which also dismissed the Pennsylvania National Mutual Casualty Company (Pennsylvania National) as a party to these proceedings.

In 1973, the claimant suffered a work-related injury to his right knee which ultimately required surgery to have a prosthesis installed. Pennsylvania National, as the insurer of the employer at this time, paid the claimant's related disability and medical compensation. In 1978, the claimant signed a final receipt of compensation and returned to work for the employer. In 1981, he filed another claim petition alleging that he had reinjured his right knee. This injury necessitated the replacement of a damaged component of

the claimant's prosthesis. The replacement prosthesis subsequently deteriorated and in 1983, it was removed in favor of a total joint replacement. In 1984, the claimant was hospitalized for treatment of adhesive capsulitis which had developed in his new prosthesis. In 1986, the claimant had arthroscopic surgery performed on his right knee for treatment also related to his prosthesis. He was hospitalized for a second time in 1986 for treatment of an infection that had developed in his right knee due to the prosthesis.

When the claimant filed his claim petition in 1981, the employer was insured by Westmoreland rather than Pennsylvania National. In the ensuing litigation, Westmoreland joined Pennsylvania National as an additional defendant. In a decision dated February 13, 1985, Referee Getty ordered Pennsylvania National to pay only those medical expenses related to the replacement and care of the prosthesis necessitated by the 1981 injury, and he ordered Westmoreland to pay all other medical expenses arising from this injury. Apparently, this decision was affirmed by the Board, and a subsequent appeal to this Court was initiated and then withdrawn.[1]

In 1987, the employer and Westmoreland filed a review petition requesting review of certain medical expenses incurred by the claimant as a result of his alleged 1981 injury. Pennsylvania National was subsequently joined as a party to these proceedings. Based on Referee Getty's prior findings of fact, Referee Desimone determined that the replacement of the claimant's knee prosthesis in 1981 was necessitated by a new injury. Referee's Decision, May 10, 1989 (R.D.) at p. 5, Reproduced Record (R.R.) at 17a. He thus dismissed Pennsylvania National as a defendant and ordered Westmoreland to pay all of the medical expenses incurred by the claimant as a result of his 1981 injury. *Id.* It is from the order of the Board affirming the

1. Both parties state in their briefs that Referee Getty's decision was affirmed by the Board. The record is otherwise devoid of any evidence of this prior adjudication by the Board.

referee's decision that the employer and Westmoreland appeal to this Court.[2]

The employer and Westmoreland argue that the Board erred as a matter of law in applying *Bowlaway Lanes v. Unemployment Compensation Board of Review (Caparosa)*, 90 Pa.Commonwealth Ct. 534, 496 A.2d 99 (1985), to this case. They contend that Referee Getty's prior decision, rather than *Bowlaway Lanes*, is controlling here.

Section 306(f)(4) of The Pennsylvania Workmen's Compensation Act (Act)[3] provides in pertinent part that:

[w]henever an employe shall have suffered the loss of a limb, part of a limb, or an eye, the employer shall also provide payment for an artificial limb or eye or other prostheses of a type and kind recommended by the doctor attending such employe in connection with such injury and any replacements for an artificial limb or eye which the employe may require at any time thereafter, together with such continued medical care as may be prescribed by the doctor attending such employe in connection with such injury ...

In *Bowlaway Lanes*, this Court had occasion to apply Section 306(f) of the Act to a case with facts similar to those present here. The claimant in *Bowlaway Lanes* suffered a work-related injury which resulted in the replacement of his hip joint with a prosthesis. Thereafter, while working for another employer, he suffered a stress fracture to his artificial hip which necessitated the replacement of the damaged hip joint with a new prosthesis. We held that the first employer was responsible for the costs of replacing the claimant's artificial hip joint if such replacement should be required because of normal wear or tear *or* because of obsolescence. *Bowlaway Lanes*, 90 Pa.Commonwealth Ct.

---

2. Our scope of review is limited to determining whether the claimant's constitutional rights were violated, whether an error of law was committed and whether necessary factual findings are supported by substantial evidence. *Russell v. Workmen's Compensation Appeal Board (Volkswagen of America)*, 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988).

3. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 531(4).

at 538, 496 A.2d at 101–02 (emphasis in original). However, we held that where the replacement has been necessitated by a new injury, as defined in Section 301(c) of the Act, 77 P.S. § 411, the employer as of the date of such new injury was responsible for the costs of replacing the damaged prosthesis under Section 306(f) of the Act. *Id.*, 90 Pa.Commonwealth Ct. at 538, 496 A.2d at 102.

■■■ Returning to the matter *sub judice*, Referee Desimone found that the replacement of the claimant's knee prosthesis, as well as the subsequent treatments of his right knee, were all necessitated by a new injury which he suffered in 1981. R.D. at 4–5, R.R. at 16a–17a. We believe that Referee Desimone correctly determined that the injury suffered by the claimant in 1981 was a new injury based on Referee Getty's previous finding that this injury was an aggravation of the original injury suffered by the claimant in 1973. 77 P.S. § 411(1); *Blue Bell Printing v. Workmen's Compensation Appeal Board*, 115 Pa.Commonwealth Ct. 203, 539 A.2d 933 (1988). We are also satisfied that there is substantial evidence in support of Referee Desimone's finding that all of the claimant's treatments and surgeries were necessitated by the 1981 injury.

■■■ We must now address Westmoreland's contention that our decision in *Bowlaway Lanes* cannot be applied retroactively in this case. "[T]he threshold test in deciding whether a new decision might be given prospective application only is whether the decision establishes a new principle of law, either by overruling clear past precedent or by deciding an issue of first impression whose resolution was not clearly foreshadowed." *Schreiber v. Republic Intermodal Corp.*, 473 Pa. 614, 375 A.2d 1285 (1977). Moreover, where an appellate decision interprets legislative intent, such interpretation is regarded as part of the statute under consideration from the time the statute was enacted. *Brewer v. Pennsylvania Bd. of Probation and Parole*, 96 Pa. Commonwealth Ct. 423, 507 A.2d 934 (1986). In reaching our holding in *Bowlaway Lanes*, this Court interpreted Section 306(f) of the Act which speaks of replacing artificial

limbs or eyes at any time *"in connection with such injury"*, and we held that the phrase "such injury" refers to the injury which resulted in the need for an artificial device or for replacement of such artificial device. *Bowlaway Lanes*, 90 Pa.Commonwealth Ct. at 538, 496 A.2d at 102 (emphasis in original). It is clear to us that our decision in *Bowlaway Lanes* must be given retrospective effect because the result was based solely upon our interpretation of Section 306(f) of the Act. We are mindful, however, that *Bowlaway Lanes* has no effect on any payments previously made by the parties pursuant to Referee Getty's prior, unappealed decision because pursuant to the doctrine of res judicata, a subsequent change in the judicial view of the law has no effect on the finality of a prior adjudication. *In re Estate of Bell*, 463 Pa. 109, 343 A.2d 679 (1975).

Accordingly, this Court rejects any interpretation or application of the Board's order which affects the finality of Referee Getty's prior decision. Otherwise, the order of the Board is affirmed.

## ORDER

AND NOW, this 25th day of January, 1991, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is hereby affirmed. The Board's order, however, does not affect the finality of Referee Getty's prior decision.