

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-22-2004

# USA v. Shambry

Precedential or Non-Precedential: Precedential

Docket No. 04-1083

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"USA v. Shambry" (2004). *2004 Decisions.* Paper 11.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/11

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 04-1083

UNITED STATES OF AMERICA

v.

CLARENCE SHAMBRY,
Appellant

Appeal from the United States District Court
for the District of New Jersey
(D.C. Criminal No. 03-cr-00008)
District Judge:  Honorable Jerome B. Simandle

Submitted Under Third Circuit LAR 34.1(a)
December 6, 2004
Before:  RENDELL and FISHER, <u>Circuit</u> <u>Judges</u>, and
YOHN*, <u>District Judge</u>.

_____

    *Honorable William H. Yohn, Jr., Senior District
Court Judge for the Eastern District of Pennsylvania, sitting
by designation.

(Filed:  December 22, 2004)

David S. Rudenstein
9411 Evans Street
Philadelphia, PA  19115
   Counsel for Appellant

George S. Leone
Office of  U.S. Attorney
970 Broad Street, Room 700
Newark, NJ  07102

Glenn J. Moramarco
Office of  U.S. Attorney
Camden Federal Building & Courthouse
401 Market Street
P.O. Box 2098, 4th Floor
Camden, NJ  08101
  *Counsel for Appellee*

OPINION OF THE COURT

RENDELL, <u>Circuit Judge</u>.

Following a bench trial on September 9, 2003, Clarence Shambry was found guilty of one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. §

2

922(g)(1).  He was sentenced to 92 months' imprisonment followed by three years of supervised release.  Shambry now appeals his conviction on two principal grounds.  First, he challenges the sufficiency of the evidence to sustain the verdict, claiming that the government failed in its burden of proving beyond a reasonable doubt that the firearm he possessed actually moved through interstate commerce.  Second, he contends that the District Court erred in denying his pretrial motion to suppress the firearm, arguing that it was obtained as the result of an illegal search and seizure.

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291.  For the reasons stated below, we will affirm.

**I.**

At about midnight on September 29, 2002, Camden Police Officers Gramaglia and Kemp were dispersing a crowd that had formed at Morton and Norris Streets in Camden, New Jersey.  While doing so, Officer Gramaglia observed a Pontiac Bonneville with two occupants traveling toward him at a high rate of speed.  As the vehicle neared a stop sign at the intersection, Officer Kemp approached the driver's side of the vehicle and Officer Gramaglia stood in front of the vehicle, attempting to stop it.  By the street lights at the intersection, Officer Gramaglia was able to view the driver through the windshield and recognized him as someone he had seen in the area while on previous patrols.  Officer Kemp instructed the driver to turn the vehicle off, but the driver instead accelerated, striking Officer Gramaglia in the leg and forcing him onto the

3

hood of the vehicle. The car traveled approximately five to ten feet before turning and throwing Officer Gramaglia from the hood.

Immediately after the incident, the officers pursued the vehicle in their marked patrol car with the emergency lights and siren activated. After a short chase, the car stopped at another intersection and the occupants got out, fleeing on foot. The officers apprehended the passenger, William Purnell, but failed to apprehend the driver. In a "Major Incident Report," Officer Gramaglia described the incident as an aggravated assault and the driver as a black male wearing a black hooded sweatshirt. In the next several weeks, Officer Gramaglia actively looked for the driver of the vehicle while on patrol, but did not look at the police department's database of mug shots to try to identify the driver.

On October 18, 2002, at about 1:20 A.M., Officers Gramaglia and Gonzalez were patrolling a high crime area, a few blocks away from where the vehicle that struck Officer Gramaglia was abandoned by its occupants. The officers observed Shambry walking east on Thurman Street when Officer Gramaglia recognized him as the driver of the vehicle that struck him. After Officer Gramaglia indicated to his partner that he recognized Shambry, the officers circled the block and as they approached Shambry, Officer Gramaglia got out of the patrol car, saying to Shambry, "Come here, I want to talk to you." At that point, Shambry fled on foot and Officer Gramaglia followed him. Ultimately, Officer Gramaglia apprehended Shambry as he tried to flee over a fence.

4

After stopping Shambry, Officer Gramaglia conducted a "pat down" search of his person, discovering a .32 caliber H&R Model 732 revolver with a defaced serial number in Shambry's right front pocket. The revolver contained two live rounds of ammunition and one spent cartridge. Shambry was transported to police headquarters and charged with illegal possession of a handgun and the September 29 aggravated assault.

On January 7, 2003, a federal Grand Jury sitting in Camden returned a one-count indictment charging Shambry with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and (2).

In a motion to suppress the revolver, Shambry argued that its seizure was the result of an unconstitutional search and seizure insofar as Officer Gramaglia had no reasonable suspicion to conduct a frisk under Terry v. Ohio, 392 U.S. 1 (1968). The District Court denied the motion, however, concluding that the search was constitutional. The Court found that Officer Gramaglia had a reasonable suspicion, grounded in specific facts, to briefly detain Shambry for investigation in connection with the prior assault based on Officer Gramaglia's observation of the driver during the assault, his recognition of the driver as someone who frequented the high crime area he patrolled, and his identification of Shambry on October 18. The Court found it reasonable for Officer Gramaglia to believe that he could identify the driver that struck him three weeks earlier and this fact alone was enough to justify a Terry stop and frisk. Furthermore, under Illinois v. Wardlow and Third Circuit precedent, Officer Gramaglia had a reasonable suspicion for a stop and frisk because of Shambry's presence in a high crime

5

area coupled with his unprovoked flight from the police. 528 U.S. 119, 119 (2000); United States v. Brown, 159 F.3d 147, 150 (3d Cir. 1998); United States ex rel. Richardson v. Rundle, 461 F.2d 860, 864 (3d Cir. 1972). Because Officer Gramaglia had a reasonable suspicion, the Court concluded, the stop and frisk were constitutional and the evidence discovered was admissible in court.

At trial, the parties stipulated to, inter alia, the following facts: (1) Officer Gramaglia recovered a .32 caliber H&R Model 732 revolver from Shambry's pockets; (2) the H&R Model 732 revolver was loaded with two live rounds; (3) the H&R Model 732 revolver was a firearm as defined by 18 U.S.C. §§ 921(a)(3) and 922(g); (4) the firearm was operable; and (5) prior to October 18, 2002, Shambry had been convicted of a crime punishable by a term of imprisonment exceeding one year in a court in the state of New Jersey. Special Agent John Leonard of the Bureau of Alcohol, Tobacco, Firearms, and Explosives was qualified as an expert witness and opined that the gun was manufactured in Massachusetts and necessarily traveled in interstate commerce before being found in Shambry's possession in New Jersey. After deliberation, the Court ultimately convicted Shambry.

Following his conviction, Shambry filed a motion for an order granting a judgment of acquittal pursuant to Fed. R. Crim. P. 29, arguing that the evidence at trial was not sufficient to prove that he possessed the firearm in or affecting interstate commerce. The Court denied this motion, noting that through the introduction of expert testimony, the government established that the firearm was manufactured in Massachusetts and that it

6

could not have been manufactured in New Jersey. Taken with the stipulated fact that Shambry possessed the firearm on October 18, 2002, in Camden, New Jersey, the logical inference was that the gun had necessarily traveled in interstate commerce at some point. The Court also noted that under United States v. Singletary, 268 F.3d 196 (3d Cir. 2001), the transport of a weapon in interstate commerce, however remote in the past, gives its present intrastate possession a sufficient nexus to interstate commerce to fall within the ambit of Section 922(g)(1). The District Court then pointed out that in Singletary, there had been clear evidence that the firearm had been manufactured in Brazil and shipped to Texas via Georgia prior to somehow ending up in Pennsylvania where it was possessed by the defendant, but, in the instant matter, there was no proof of the firearm moving, only that it had been manufactured in Massachusetts and was possessed by Shambry in New Jersey. Looking to precedent in the First, Fifth, Ninth, Tenth, and Eleventh Circuits, the Court ultimately concluded that the government had, with the evidence outlined above, sufficiently proved that the firearm had been possessed "in or affecting" interstate commerce.

On appeal, Shambry argues that the government's evidence regarding whether the revolver had moved through interstate commerce was insufficient to sustain the verdict and that the search and seizure of the revolver by Officer Gramaglia were unconstitutional.

## II.

Regarding the challenge to the sufficiency of the

7

evidence, "we review the evidence in the light most favorable to the government as verdict winner," United States v. Applewhaite, 195 F.3d 679, 684 (3d Cir. 1999), and "[w]e must affirm the conviction[] if a rational trier of fact could have found defendant guilty beyond a reasonable doubt, and the verdict is supported by substantial evidence," United States v. Coyle, 63 F.3d 1239, 1243 (3d Cir. 1995). Nevertheless, to the extent this issue turns on statutory interpretation, we exercise plenary review. See United States v. Sparrow, 371 F.3d 851, 852 (3d Cir. 2004) (citing United States v. Cepero, 224 F.3d 256, 258 (3d Cir. 2000) (en banc)). Regarding the denial of the motion to suppress, we review the District Court's findings of fact for clear error and subject the Court's legal analysis and application of law to plenary review. United States v. Riddick, 156 F.3d 505, 509 (3d Cir. 1998).

## III.

Shambry's primary argument on appeal is that although the government proved the revolver was manufactured in Massachusetts and was possessed by Shambry in New Jersey, it failed to prove beyond a reasonable doubt that that particular revolver actually moved through interstate commerce.

Like the District Court, our consideration of this argument begins with our precedent in United States v. Singletary, 268 F.3d 196, 200 (3d Cir. 2001), where we interpreted Scarborough v. United States, 431 U.S. 563 (1977), to "establish[] the proposition that the transport of a weapon in interstate commerce, however remote in the distant past, gives its present intrastate possession a sufficient nexus to interstate

8

commerce to fall within the ambit of [Section 922(g)(1)]." To the extent that both parties and the District Court agree that we have never addressed the precise issue of whether proof that the firearm was manufactured in a state other than the state where the possession occurred is sufficient to establish that the possession was "in or affecting commerce" under 18 U.S.C. § 922(g)(1), we conclude, like the overwhelming majority of our sister courts of appeals, that such proof meets the minimal nexus required to establish that the firearm affected interstate commerce.[1]  Accordingly, we conclude that the government

---

[1]  Accord United States v. Corey, 207 F.3d 84, 88 (1st Cir. 2000) ("[T]he 'interstate nexus' element was met provided the government demonstrated that [the defendant] possessed the shotgun in a state other than the one in which it was manufactured."); United States v. Lawson, 173 F.3d 666, 670 (8th Cir. 1999) (finding that the stipulation that the guns were manufactured outside of the state where the defendant possessed them satisfied "'the minimal nexus that the firearms have been, at some time, in interstate commerce,' that is, that the firearms at some point prior to [the defendant's] possession . . . crossed a state line" (quoting United States v. Shelton, 66 F.3d 991, 992 (8th Cir. 1995) (per curiam))); United States v. Pierson, 139 F.3d 501, 504 (5th Cir. 1998) ("[E]vidence that a gun was manufactured in one state and possessed in another state is sufficient to establish a past connection between the firearm and interstate commerce."); United States v. Crump, 120 F.3d 462, 466 & n.2 (4th Cir. 1997) ("[It] is our view that the movement of a firearm beyond the boundaries of its state of manufacture 'substantially affects' interstate commerce . . . ."); United States

9

provided sufficient evidence and sustained its burden of proving beyond a reasonable doubt that Shambry possessed the revolver in or affecting interstate commerce within the meaning of 18 U.S.C. § 922(g)(1).

**IV.**

Shambry's second argument is that the search and seizure that produced the gun were unconstitutional and the District Court erred in denying his motion to suppress the gun. Specifically, Shambry contends that Officer Gramaglia tackled and arrested him and, therefore, the <u>Terry</u> stop "reasonable

---

<u>v. Lewis</u>, 100 F.3d 49, 50 (7th Cir. 1996) ("[P]roof of a gun's manufacture outside of the state in which it was allegedly possessed is sufficient to support the factual finding that the firearm was 'in or affecting commerce.'" (quoting <u>United States v. Lowe</u>, 860 F.2d 1370, 1374 (7th Cir. 1988))); <u>United States v. Farnsworth</u>, 92 F.3d 1001, 1006 (10th Cir. 1996) (finding expert testimony that the defendant's gun had been manufactured in a different state from that in which it was found was sufficient nexus to interstate commerce); <u>United States v. Sanders</u>, 35 F.3d 61, 62 (2d Cir. 1994) (finding fact that gun was manufactured in a state different from that in which it was possessed was sufficient nexus to interstate commerce); <u>United States v. Morris</u>, 904 F.2d 518, 519 (9th Cir. 1990) (same); <u>United States v. Singleton</u>, 902 F.2d 471, 473 (6th Cir. 1990) ("[T]he mere fact that the firearm was manufactured in a different state established a sufficient nexus with interstate commerce.").

10

suspicion" standard is inapplicable, that Wardlow is inapplicable because his flight upon Officer Gramaglia's saying "come here" was not unprovoked and was, rather, tantamount to exercising his right not to cooperate with the police, and that there is nothing in the record that supports Officer Gramaglia's statement that he recognized Shambry as the driver that hit him and, therefore, Officer Gramaglia could not have stopped Shambry in good faith on October 18. We find each of these contentions to be without merit.

We agree with the District Court that it was reasonable that Officer Gramaglia could have recognized Shambry as the driver of the car that hit him, accepting, as we must, the Court's crediting of Officer Gramaglia's testimony in the absence of clear error. We also believe that Terry is applicable and the stop was justified in light of the fact that the area had a reputation for criminal activity and Shambry fled when Officer Gramaglia sought to question him. See Wardlow, 528 U.S. at 119; Brown, 159 F.3d at 150; Rundle, 461 F.2d at 864. The fact that Officer Gramaglia said "come here" as he approached Shambry does not negate this conclusion. See Brown, 159 F.3d at 150. All of these facts were more than just the "inarticulate hunches" proscribed by Terry, and we therefore agree with the District Court's conclusion that "Officer Gramaglia had a reasonable suspicion, grounded in specific facts, to briefly detain Shambry for investigation in connection with" Officer Gramaglia's assault. The frisk was also justified under Terry insofar as Officer Gramaglia had an articulable suspicion that Shambry had been involved in a crime of violence, i.e., the assault on September 29. See Terry, 392 U.S. at 13, 33.

11

## V.

For the reasons stated above, we will AFFIRM the District Court's judgment and Shambry's conviction.