**[J-38-2019]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**


**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| RICHARD D. NAVARRO, | : | No. 72 MAP 2018 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court dated May 17, |
| | : | 2018 at No. 1433 CD 2017 Vacating |
| v. | : | the Order of the Pennsylvania Office |
| | : | of Attorney General Administrative |
| | : | Law Judge at No. FAD 01410, dated |
| PENNSYLVANIA STATE POLICE, | : | August 15, 2017 and Remanding. |
| | : | |
| Appellant | : | SUBMITTED:  March 18, 2019 |


<u>**OPINION**</u>


**JUSTICE DOUGHERTY**                                   **DECIDED:  July 17, 2019**


We consider whether, when denying the return of a firearm on the basis of a federal statute, specifically 18 U.S.C. §922(g), the Pennsylvania State Police ("PSP") must establish the subject firearm moved in interstate or foreign commerce.  We answer that question in the affirmative and, accordingly, affirm the order of the Commonwealth Court remanding the matter for further proceedings.

In 2012, a firearm was stolen from appellee Richard D. Navarro.  In November 2013, as a result of appellee's alterations to a prescription for Percocet tablets, he pleaded guilty to two counts of forgery graded as first-degree misdemeanors and the court sentenced him to twenty-four months' probation.[1]  Sometime thereafter, appellee learned

---

[1] Forgery, graded as a first-degree misdemeanor, is punishable by up to five years' imprisonment.  18 Pa.C.S. §§1104, 4101(c).

PSP had recovered his stolen firearm and he submitted an application for its return pursuant to Pennsylvania's Uniform Firearms Act ("UFA"), 18 Pa.C.S. §§6101-6128. *See* 18 Pa.C.S. §6111.1(b)(4) ("The Pennsylvania State Police and any local law enforcement agency shall make all reasonable efforts to determine the lawful owner of any firearm confiscated or recovered . . . and return said firearm to its lawful owner if the owner is not otherwise prohibited from possessing the firearm."). Although the UFA expressly precludes persons who are convicted of certain enumerated crimes from possessing firearms, forgery is not an enumerated crime under the UFA and no other precluding classifications exist under Pennsylvania law to bar appellee from firearm possession. *See id.* at §6105(b), (c) (enumerating specific prohibiting offenses and persons). However, PSP denied the application because a Pennsylvania Instant Check System ("PICS") report indicated appellee had disqualifying convictions under federal law.

Appellee challenged the denial, and by letter dated December 23, 2016, PSP confirmed denial was based on federal law. Specifically, PSP relied on Section 922(g) of the Federal Gun Control Act, 18 U.S.C. §§921-931 ("GCA"), which makes it unlawful for any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. §922(g)(1). PSP further explained appellee's 2013 forgery convictions — punishable by up to five years' imprisonment — were "prohibiting" under Section 922(g).

Appellee timely appealed the PSP determination to the Office of the Attorney General ("OAG"), and at a hearing before an Administrative Law Judge ("ALJ"), the Commonwealth presented evidence that appellee's guilty pleas to two counts of forgery were confirmed by the PICS report. Additionally, a PICS supervisor testified the denial of

appellee's request for return of the firearm was upheld on the basis of "the federal law, 18 U.S.C., Subsection 922(g) for his conviction of forgery." N.T. 7/7/17, at 13. Notwithstanding the ALJ's failure to make any findings regarding whether the firearm had "been shipped or transported in interstate or foreign commerce," the ALJ affirmed the PSP's decision to deny return of appellee's firearm based on Section 922(g) of the GCA. Findings And Reasons For Denial of Request for Relief, 8/21/17 at 2 (unpaginated original). Appellee then filed a timely appeal to the Commonwealth Court.

The Commonwealth Court vacated and remanded for further factual findings. *Navarro v. Pa. State Police*, No. 1433 C.D. 2017, unpublished memorandum at 1 (Pa. Cmwlth. filed May 17, 2018). The panel first acknowledged that, before returning a firearm to its owner pursuant to UFA procedures, PSP has a duty under Section 6111.1 to review the criminal history of "potential transferees" and determine whether such person is prohibited from receipt or possession of a firearm under federal or state law. *Id.* at 2-3, *citing* 18 Pa.C.S. §6111.1 (PSP shall review criminal history and fingerprint records to determine if potential purchaser or transferee is prohibited from receipt or possession of a firearm under Federal or State law). The panel next recognized PSP's denial in this case was based on federal law, and explained Section 922(g) of the federal GCA requires "proof of two things: (1) a disqualifying conviction, and (2) that the firearm in question was involved in interstate or foreign commerce." *Id.* at 4, *citing* 18 U.S.C. §922(g). The panel then determined, "per the language of the [federal] statute, without proof that the firearm sought to be purchased, possessed, or received moved in interstate commerce, GCA Section 922(g) would not apply regardless of whether or not the individual in question had a[n otherwise] disqualifying criminal offense." *Id.* The panel noted that although proof of an interstate or foreign commerce connection need not be extensive, it must nonetheless be present in some form to trigger application of Section 922(g) and prohibit return of

appellee's firearm. Accordingly, because the ALJ made no findings with regard to the interstate or foreign commerce status of the firearm appellee requested be returned to him, the panel vacated the decision of the ALJ and remanded for further findings in that regard.

We granted discretionary review based on PSP's petition for allowance of appeal.[2] PSP claims "the decision of the Commonwealth Court is both legally and practically untenable and must be reversed." Appellant's Brief at 15. Specifically, PSP challenges the panel's conclusion appellee could be denied return of his firearm only if PSP established the firearm "moved in interstate commerce." *Navarro*, *supra*, at 4. PSP insists no such proof is required and the only issue to be determined by the ALJ pursuant to Section 6111.1(e) of the UFA was "whether the record PSP relied upon is accurate." Appellant's Brief at 10-11. PSP relies on the language in Section 6111.1(e)(1) that any person denied the right to receive or possess a firearm as a result of "'the procedures established by this section may challenge the **accuracy** of that person's criminal history,'" and maintains the duty of the PSP under the statute is simply to "'conduct a review of the **accuracy** of the information forming the basis for the denial[.]'" *Id.* at 9-10, *quoting* 42 Pa.C.S. §6111.1(e)(1), (2) (emphasis added). PSP insists "[t]he statutory language in § 6111.1(e)(1) is unambiguous and its plain language controls[.]" *Id.* at 10, *citing* 1 Pa.C.S. §1921(b) ("[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit"); *Shafer Elec. & Constr. v. Mantia*, 96 A.3d 989, 994 (Pa. 2014) (courts should not add statutory

---

[2] PSP sought a determination of whether the Commonwealth Court erred "when it reversed a decision of the Pennsylvania Office of the Attorney General upholding a decision of the Pennsylvania State Police to deny a firearms background check, based on a failure of the ALJ to determine if a firearm had moved in interstate commerce, when the statute, 18 Pa.C.S. §6111.1(e), does not require such a finding[.]" *Navarro v. Pa. State Police*, 199 A.3d 339 (Pa. 2018) (*per curiam*).

requirements by interpretation). Thus, PSP argues it was only required to produce evidence at the hearing before the ALJ that the PICS record upon which it relied was accurate. PSP suggests, because the PICS report accurately indicated appellee had two forgery convictions, each punishable by up to five years in prison, PSP met its burden under Section 6111.1 that transfer to appellee was prohibited under Section 922(g)(1) of the federal GCA and was "not required to prove anything further." *Id.* at 12.[3]

Moreover, PSP argues if the "Legislature had intended for PSP to prove, in some or all cases under [Section] 6111.1(e), whether a firearm moved in interstate or foreign commerce, it would have provided a mechanism for PSP to receive this information each time a background check is processed for the sale or transfer of a firearm." *Id.* PSP asserts, "nowhere in the UFA itself" are firearms dealers or law enforcement officers "required to report to PSP the make and model of a firearm for which a background check is being requested, at the time the check occurs." *Id.*[4] Thus, PSP argues, reading the sections of the UFA "*in para materia* . . . compels the conclusion that PSP is not required by the UFA to prove a firearm moved in interstate or foreign commerce." *Id.* PSP insists "the decision of the Commonwealth Court in this case effectively imposes that requirement upon the PSP (at least when federal law is at issue)." *Id.* at 13. In sum, PSP

---

[3] Both state and federal courts recognize the language in Section 922(g)(1) — identifying crimes punishable by imprisonment for a term exceeding one year — refers to the maximum allowable sentence for the crime (in this case, five years for forgery) and not the sentence actually received (in this case, twenty-four months of probation). *Ray v. Office of Attorney General*, 65 A.3d 473, 475 (Pa. Cmwlth. 2013); *see Schrader v. Holder*, 704 F.3d 980, 985 (D.C. Cir. 2013) (noting "other courts of appeal have uniformly rejected the argument that the actual sentence imposed is controlling for purposes of triggering the federal firearms ban").

[4] PSP acknowledges "the UFA does require" such information at Section 6111(b)(1) (pertaining to record of sale), Appellant's Brief at 12, n.4., but notes the information need not be conveyed simultaneously with the PICS check. PSP concedes information regarding make, model and manufacture of a firearm is sufficient information upon which to determine whether the firearm has moved in interstate or foreign commerce.

asserts "[t]he Commonwealth Court's decision effectively amends the statute by adding a new requirement not provided for by the plain language of the statute and places an additional evidentiary burden on the PSP, in contravention of the rules of statutory construction." *Id.*

As to practical considerations, PSP maintains the panel's decision "is problematic due its potential impact on the PSP in their operation of PICS[,]" because "PSP processes hundreds of thousands of checks through PICS each year[.]" *Id* at 15. PSP argues, without elaboration or explanation, if it is required to "gather more information, such as the make and model of a firearm . . . (so that PSP can check if the firearm moved in interstate or foreign commerce)," the additional strain "on to an already strained system . . . could lead to more approvals made in error, *i.e.*, more prohibited people gaining access to firearms." *Id.*

In his *pro se* brief to this Court,[5] appellee argues if Section 6111.1 does not require the PSP "to conduct the commerce history of the firearm in question[,]" the background check and verification procedures codified in the UFA violate principles of Due Process because the federal firearm prohibition requires proof of interstate or foreign commerce in order to be enforced. Appellee's Brief at 11.

The parties agree the issue presented is a pure question of law. Accordingly, our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Bortz*, 909 A.2d 1221, 1223 (Pa. 2006). We begin our analysis by recognizing that, under federal jurisprudence, in order to prove a violation of Section 922(g)(1) of the GCA — which prohibits any person "who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to

---

[5] Appellee has appeared *pro se* throughout all stages of this litigation.

receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce" — the government must show the firearm's connection to interstate commerce. In *United States v. Bass,* 404 U.S. 336 (1971), the United States Supreme Court analyzed the interstate commerce aspect of the predecessor statute to Section 922(g) of the GCA (then codified at 18 U.S.C. §1202(a) (repealed 1986)), which made guilty of a federal offense, any felon "who receives, possesses, or transports in commerce or affecting commerce . . . any firearm[.]" 404 U.S. at 337, *quoting* 18 U.S.C. §1202(a). The High Court did not interpret the statute to reach "mere possession" of firearms, but determined some interstate commerce aspect must be shown, because "[a]bsent proof of some interstate commerce nexus in each case, [the statute] dramatically intrudes upon traditional state criminal jurisdiction." *Id.* at 350.

Six years later, in *Scarborough v. United States,* 431 U.S. 563 (1977), the Court addressed squarely "whether proof that the possessed firearm previously traveled in interstate commerce is sufficient to satisfy the statutorily required nexus between the possession of a firearm by a convicted felon and commerce." *Id.* at 564. The Court accepted the government's contention it only need prove "the firearm possessed by the convicted felon traveled **at some time** in interstate commerce." *Id.* at 568 (emphasis added). Thus, the *Scarborough* Court established the proposition that the transport of a weapon in interstate commerce, however remote in the distant past, gives its present possession a sufficient nexus to interstate commerce to fall within the ambit of the statute.

Because 18 U.S.C. §1202(a) is the predecessor to the current statute, a number of federal Circuit Courts of Appeal have held the High Court's interpretation of that earlier statute applies equally to Section 922(g)(1) of the GCA; in those decisions, a showing the subject firearm was manufactured in a state other than the state in which it was possessed was held to be sufficient proof to satisfy the interstate commerce requirement. For

example, in *United States v. Shambry*, 392 F.3d 631 (3rd Cir. 2004), the court opined,

"To the extent that both parties and the District Court agree that we have never addressed

the precise issue of whether proof that the firearm was manufactured in a state other than

the state where possession occurred is sufficient to establish that the possession was 'in

or affecting commerce' under 18 U.S.C. § 922(g)(1), we conclude, like the overwhelming

majority of our sister courts of appeals, that such proof meets the minimal nexus required

to establish that the firearm affected interstate commerce." *Id.* at 634.[6]

However, PSP argues it is not required under Section 6111.1(e) of the UFA to

provide such proof when it denies a firearm transfer based on Section 922(g)(1) of the

federal GCA. PSP claims the Commonwealth Court did not engage in a statutory

---

[6] *Accord United States v. Leuschen*, 395 F.3d 155,161 (3rd Cir. 2005) (evidence firearms were manufactured outside Pennsylvania provided proof of requisite nexus to interstate commerce); *United States v. Clay*, 355 F.3d 1281, 1287 (11th Cir. 2004) (evidence firearm bore imprint indicating manufacture outside state where possessed satisfied interstate commerce requirement); *United States v. Corey*, 207 F.3d 84, 88 (1st Cir. 2000) ("[T]he 'interstate nexus' element was met provided the government demonstrated that [the defendant] possessed the shotgun in a state other than the one in which it was manufactured."); *United States v. Lawson*, 173 F.3d 666, 670 (8th Cir. 1999) (finding stipulation guns were manufactured outside of state where defendant possessed them satisfied interstate commerce requirement, "that is, that the firearms at some point prior to [the defendant's] possession . . . crossed a state line") (additional citation omitted); *United States v. Pierson*, 139 F.3d 501, 504 (5th Cir. 1998) ("[E]vidence that a gun was manufactured in one state and possessed in another state is sufficient to establish a past connection between the firearm and interstate commerce."); *United States v. Crump*, 120 F.3d 462, 466 n.2 (4th Cir. 1997) ("[It] is our view that the movement of a firearm beyond the boundaries of its state of manufacture 'substantially affects' interstate commerce[.]"); *United States v. Lewis*, 100 F.3d 49, 50 (7th Cir. 1996) (proof of gun's manufacture outside of state in which it was allegedly possessed sufficient to support factual finding firearm was "in or affecting commerce"); *United States v. Farnsworth*, 92 F.3d 1001, 1006 (10th Cir. 1996) (finding expert testimony defendant's gun was manufactured in different state from state in which it was found supplied sufficient nexus to interstate commerce); *United States v. Sanders*, 35 F.3d 61, 62 (2nd Cir. 1994) (finding fact gun manufactured in state different from where it was possessed sufficient nexus to interstate commerce); *United States v. Morris*, 904 F.2d 518, 519 (9th Cir. 1990) (same); *United States v. Singleton*, 902 F.2d 471, 473 (6th Cir. 1990) ("[T]he mere fact that the firearm was manufactured in a different state established a sufficient nexus with interstate commerce.").

construction analysis of Section 6111.1(e) of the UFA, and had it done so, it would have determined PSP is merely required to prove the PICS record of appellee's forgery convictions was accurate in order to trigger the federal prohibition of Section 922(g)(1). We reject PSP's argument, and as the following statutory construction analysis reveals, the Commonwealth Court correctly vacated the ALJ's decision and remanded the matter for further proceedings.

Initially, we recognize "the objective of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly." *Doe v. Franklin Cty.*, 174 A.3d 593, 605 (Pa. 2017), *citing* 1 Pa.C.S. §§1501-1504, 1921(a) (Statutory Construction Act) (additional quotation marks and citations omitted). We further note the best indication of legislative intent is the plain language of the statute. *Id.*, *citing Commonwealth v. Shiffler*, 879 A.2d 185, 189 (Pa. 2005). *See also* 1 Pa.C.S. §1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."). We therefore consider the plain language of Section 6111.1 to determine whether the General Assembly intended a "review of the accuracy of the information forming the basis of the denial" under federal law must include information regarding the commerce history of the firearm. *See* 18 Pa.C.S. §6111.1(b)(1)(i), (e)(2).

Section 6111.1 of the UFA requires the PSP, upon receipt of a request for a criminal history check — which occurs, *inter alia*, when an individual in Pennsylvania seeks to purchase or otherwise receive a firearm — to review the individual's criminal history and determine whether he or she is "prohibited from receipt or possession of a firearm under Federal or State law[.]" 18 Pa.C.S. §6111.1(b)(1)(i). The UFA permits a person, "denied the right to receive" or "possess . . . a firearm[,]" to "challenge the accuracy of [his or her] criminal history . . . by submitting a challenge to the Pennsylvania

State Police[.]" 18 Pa.C.S. §6111.1(e)(1). In the event of a challenge, the PSP "shall conduct a review of the accuracy of the information forming the basis for the denial and shall have the burden of proving the accuracy of the record." 18 Pa.C.S. §6111.1(e)(2). "[T]he Pennsylvania State Police shall notify the challenger of the basis for the denial[.]" *Id.* "The decision of the Pennsylvania State Police shall include all information which formed a basis for the decision." *Id.* If the challenge is denied "the person shall have the right to appeal the decision to the Attorney General" who "shall conduct a hearing de novo in accordance with the Administrative Agency Law" where "[t]he burden of proof shall be upon the Commonwealth." 18 Pa.C.S. §6111.1(e)(3).

We have little difficulty in analyzing the plain language above to require PSP, when presented with a challenge to the accuracy of a person's criminal history that has resulted in the denial of that person's right to receive a firearm, to conduct a review of the accuracy of all the information which formed the basis of the decision and to communicate that information to the challenger. Here, in the face of a challenge, PSP communicated to appellee the decision to deny him a return of his firearm was upheld on the basis of the "federal law," citing section 922(g) of the GCA. The communication explained appellee's forgery convictions were "prohibiting" under that law. Accepting the plain and unambiguous meaning of these provisions, we must now decide whether PSP sufficiently established it complied with its statutory obligations.

Our research has revealed no binding case with similar facts that addresses the issue raised here. However, the panel below and the parties cite to an unpublished decision of the Commonwealth Court, *Taylor v. Pa. State Police*, No. 390 C.D. 2010, unpublished memorandum (Pa. Cmwlth. filed Feb. 18, 2011). In that case, Taylor attempted to purchase a firearm and submitted an application on the PICS system. His application was held as "undetermined" and he was advised he had 30 days to provide

additional information. *Id.* at *2. Taylor responded; his application was subsequently denied and he received a letter from PSP stating his prior conviction for Firearms Carried Without a License was prohibiting under 18 U.S.C. §922(g)(1). Taylor appealed to the OAG and a hearing was conducted before an ALJ. At the hearing, the PSP's representative testified Taylor's conviction was for a first-degree misdemeanor under state law carrying a potential maximum sentence of up to five years' imprisonment. Taylor was not charged with a federal crime and the PSP did not establish whether Taylor was involved in interstate commerce. Taylor's attorney argued the federal prohibition codified at Section 922(g) did not apply, in part, because Taylor was not engaged in interstate commerce. The ALJ nevertheless affirmed the PSP's decision to deny the firearm purchase, specifically determining the firearm had been manufactured in Florida. Taylor appealed to the Commonwealth Court, which affirmed. Judge Patricia A. McCullough authored a Concurring Opinion addressing, in part, Taylor's argument he was not personally involved in interstate commerce, and the Section 922(g) prohibition should therefore not apply to him. She noted "the requirement of interstate or foreign commerce was clearly satisfied by the ALJ's determination that the firearm was, as the Majority noted, manufactured in Florida." *Id.* at *6 (McCullough, J., concurring). Judge McCullough cited an exhibit introduced into evidence at trial of a photocopy of the firearm manufacturer's website, showing it is located in Coca, Florida, and noted the evidence of out-of-state manufacture was in keeping with the requirements under federal law. *Id.*, *citing Shambry*, *supra*, and *Leuschen*, *supra*.

We find *Taylor* to be instructive, and turning to the present matter, we conclude the Commonwealth Court did not err in determining the ALJ must make findings regarding the interstate or foreign commerce status of a firearm before affirming PSP's decision to deny transfer to appellee. PSP clearly presented "accurate" record information to the

extent it included a conviction for a crime punishable by up to five years' imprisonment. However, the information was incomplete to the extent it failed to show the firearm in question moved in interstate or foreign commerce, a required element of the prohibition under federal law on which PSP relied. As the Commonwealth Court here properly found, the federal prohibition of Section 922(g) simply cannot apply absent some proof the firearm at issue moved in interstate or foreign commerce. We agree with the panel's conclusion the evidence relating to such commerce need not be extensive and may be satisfied by showing the gun was manufactured outside Pennsylvania (or that the gun otherwise crossed state lines). *See, e.g.*, *Shambry*, *supra*.[7]

Order affirmed.

Chief Justice Saylor and Justices Baer, Todd, Donohue, Wecht and Mundy join the opinion.

---

[7] Although we accept PSP's contention the PICS system, as currently structured, contains no mechanism to quickly identify the manufacturer of any particular firearm, we conclude the potential lack of a computerized database linking models to manufacturers cannot be sufficient reason to ignore what is a clear determinative legal factor in cases involving prohibitions on firearm possession under federal law.