# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police,        :
                Petitioner     :
                             :
           v.               :    No. 918 C.D. 2020
                             :    Submitted: June 24, 2022
Richard Madden, Jr. (Office of   :
Attorney General),            :
                Respondent  :

BEFORE:   HONORABLE ANNE E. COVEY, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE LORI A. DUMAS, Judge

OPINION
BY JUDGE DUMAS                        FILED: October 21, 2022

       Pennsylvania State Police (the PSP) petitions for review of the order of the Administrative Law Judge (ALJ) of the Office of Attorney General (OAG), which overruled the PSP's denial of an application to possess a firearm filed by Richard Madden, Jr. (Respondent).[1]  On review, we consider whether the ALJ erred in finding that the PSP had not satisfied its burden of proving the "interstate commerce" element implicitly required by Section 6105(c)(9) of the Pennsylvania Uniform Firearms Act of 1995 (UFA), 18 Pa. C.S. §6105(c)(9).

       During the pendency of this appeal, our Supreme Court issued its decision in *Navarro v. Pennsylvania State Police*, 212 A.3d 26 (Pa. 2019) (*Navarro II*), which held that the PSP must demonstrate that a firearm traveled in interstate or foreign commerce before denying a firearm return application pursuant to federal law.  The Court's recognition of this requirement is relevant here as Section 6105(c)(9) expressly incorporates federal law into its plain terms.  Thus, after careful

---

[1] Respondent, appearing *pro se*, did not submit a brief before this Court.

consideration, we vacate and remand to the ALJ for further proceedings and additional evidence on the limited question of whether Respondent's requested firearm was in or affected interstate commerce.

## I. BACKGROUND[2]

On July 4, 2016, following a domestic violence incident involving his live-in girlfriend, police apprehended Respondent and charged him with several crimes. Upon his arrest, Respondent first denied having a firearm, but later informed police of the gun in his car. Certified Record (C.R.), Item No. 5, Incident Report, at 4-5. A background check revealed Respondent was on probation and not permitted to have a firearm. Thereafter, he was incarcerated for the probation violation, and police lawfully confiscated his gun. C.R., Item No. 5, Incident Report, at 5. At a September 2016 hearing, Respondent pleaded guilty to the charge of Disorderly Conduct - Engage in Fighting, 18 Pa.C.S. § 5503(a)(1), which is a misdemeanor of the third degree, and was sentenced to 12 months' probation and fines.

In September 2017, Respondent contacted the PSP seeking return of his firearm. Upon completion of a background check using the Pennsylvania Instant Check System (PICS),[3] the PSP informed Respondent that his firearm return request was denied. Respondent then submitted a firearm application challenge (application) to PICS. The PSP issued its initial written notice to Respondent, explaining his firearm application had been denied due to his criminal record. The

---

[2] The facts of this matter are not in dispute. Unless stated otherwise, we derive this background from the decision of the ALJ, which is supported by the record. *See* ALJ Op. & Order, 8/21/20.

[3] The General Assembly created the Pennsylvania Instant Check System (PICS), the state's digitized background check database, to afford the PSP instantaneous access to an applicant's criminal and mental health records at the local, state, and federal level. *See* 18 Pa.C.S. § 6111.1(b)(3)(i).

letter invited Respondent to submit supporting documents to assist the PSP in making its final decision. Respondent did not. Thereafter, the PSP issued a final written decision upholding the denial of Respondent's application because his 2016 disorderly conduct conviction was a state misdemeanor offense involving domestic violence under Section 922(g)(9) of the Federal Gun Control Act of 1968 (FGCA), 18 U.S.C. §922(g)(9), and Section 6105(c)(9) of the UFA.

Respondent appealed to the OAG, which held an evidentiary hearing on December 7, 2018. The PSP introduced evidence documenting Respondent's conviction and that he had used physical force or violence during the offense. *See generally* C.R., Item No. 1, Hearing Transcript, Notes of Testimony, 12/7/2018. Although Respondent disputed the details of the domestic incident, he conceded that he had pleaded guilty to disorderly conduct. *See id.*

By August 21, 2020 decision, the ALJ reversed the PSP's denial of Respondent's application. According to the ALJ, the PSP had proven that Respondent had been convicted of a misdemeanor crime involving domestic violence but failed to establish a nexus between the requested firearm and interstate commerce as required by both Section 922(g)(9) of the FGCA and Section 6105(c)(9) of the UFA. The ALJ recognized that *Navarro II* was decided *after* the evidentiary hearing held in this case. Nevertheless, the ALJ noted that "*Navarro* [*II*] clarified existing federal law in the context of 18 Pa.C.S. § 6111.1, which requires the PSP to enforce federal law governing firearm prohibitions. It did not create a

new substantive legal rule." ALJ Op. & Order, 8/21/2020 at 16. The PSP timely petitioned for review.[4,5]

## II. ISSUES

The PSP contends that the ALJ erred in addressing the issue of interstate commerce *sua sponte*. PSP's Br. at 11-12. Additionally, the PSP asserts that the plain language of Section 6105(c)(9) of the UFA does not require an interstate commerce finding. *Id*. at 12-14.[6]

Alternatively, the PSP asks for this Court to order a remand because at the time of the December 2018 evidentiary hearing, Pennsylvania precedent had not yet resolved the interstate commerce element in Section 922 of the FGCA. *Id*. at 14-15. According to the PSP, a remand would be appropriate because any subsequent firearm requests from Respondent, which would trigger an automatic background check, would also result in denials. *Id*. at 15.

## III. DISCUSSION

The right to bear arms serves as the basis for ongoing judicial, legislative, political, and cultural debate in the United States. Although

---

[4] On September 8, 2020, the PSP timely sought reconsideration and leave to reopen the record for the limited purpose of presenting evidence on the interstate commerce element. However, the application for reconsideration was denied by operation of law. *See* 1 Pa.Code § 35.241(d).

[5] On appeal, we will affirm an administrative agency's decision unless "constitutional rights were violated, an error of law was committed, the procedure before the agency was contrary to statute, or any finding of fact made by the agency and necessary to support its adjudication is unsupported by substantial evidence." *Pa. State Police v. Doe*, 217 A.3d 455, 461 n.5 (Pa. Cmwlth. 2016).

[6] The PSP only contests the ALJ's finding concerning Section 6105(c)(9) of the UFA. However, as further analysis will demonstrate, the relevant sections of the UFA and the FGCA are inextricably linked, and we must address both statutes.

constitutionally protected, the right to possess firearms is not limitless but rather subject to longstanding regulatory measures for individuals with criminal records or mental illnesses. *See McDonald v. City of Chicago,* 561 U.S. 742, 778, 786 (2010).

In Pennsylvania, the General Assembly has delegated the regulation of individual firearm possession to the PSP, which assesses an applicant's eligibility "under Federal or State law." 18 Pa.C.S. § 6111.1(b)(1)(i). The UFA[7] governs the possession, use, control, sale, transfer, manufacturing, or license to do any such action, of an individual's right to a firearm within the Commonwealth. 18 Pa. C.S. §6105(a)(1). Our state legislature bars individuals convicted of certain crimes from having access to a gun, regardless of sentence length or crime location, *i.e.*, whether committed inside or outside of the Commonwealth. *Id.*; *see also* 18 Pa. C.S. §6105(c). While the UFA controls Pennsylvania intrastate use of firearms, the FGCA[8] governs firearm use in or affecting foreign or interstate commerce. 18 U.S.C. §922(a)(1)(A).

*A. Navarro II applies retroactively to Respondent's application*

The PSP argues that the ALJ erred in raising the interstate commerce element *sua sponte*. We disagree. Because *Navarro II*, which required proof of a firearm's involvement in interstate commerce to uphold a firearm denial under federal law, was decided while the present matter was pending, we must first determine whether its holding applies here.

In 2019, in a case of first impression, our Supreme Court addressed the interstate commerce element of Section 922(g)(9) of the FGCA.[9] The case history

---

[7] 18 Pa.C.S. §§ 6101-6127, *as amended*, 18 Pa.C.S. § 6105(c)(9).

[8] 18 U.S.C. §§ 921-931.

[9] As the ALJ noted in the appealing order, the U.S. Supreme Court has interpreted an interstate commerce nexus in prior federal gun control statutes. *See, e.g.*, *Scarborough v. U.S.*,

begins with our Court, in *Navarro v. Pennsylvania State Police* (Pa. Cmwlth., No. 1433 C.D. 2017, filed May 17, 2018) (unreported), 2018 WL 2247193 (*Navarro I*), *aff'd,* 212 A.3d 26 (Pa. 2019) (*Navarro II*), which vacated and remanded an ALJ's order denying a firearm application. We were unable to properly review the ALJ's decision because *no findings* were made concerning the interstate commerce element of Section 922(g) of the FGCA. *Navarro I.,* slip. op. at \*5. On appeal, our Supreme Court held that the PSP *must* show proof that the firearm moved in interstate or foreign commerce before refusing return of a firearm under Section 922(g)(9) of the FGCA.[10] *Navarro II*, 212 A.3d at 33.

Because this was the Court's "first opportunity" to directly address the interstate commerce element, *Navarro II* applies retroactively. *Kendrick v. Dist. Attorney of Phila. Cnty.*, 916 A.2d 529, 537 (Pa. 2007) (internal citation omitted). When our Supreme Court has "not yet answered a *specific question* about the meaning of the statute, [its] initial interpretation does not announce a new rule of law." *Fiore v. White*, 757 A.2d 842, 848 (Pa. 2000) (emphasis added). Instead, the decision becomes "part of the statute under consideration from the time the statute was enacted." *Thiele, Inc. v. Workers' Comp. Appeal Bd. (Younkers)*, 586 A.2d 489, 491 (Pa. Cmwlth. 1991). *Navarro II* did not issue a new rule of law but "merely clarified the plain language of the statute" and relied on a statutory interpretation

---

431 U.S. 563, 567 (1977) (requiring satisfaction of the interstate commerce nexus under prior federal gun control law); *U.S. v. Bass*, 404 U.S. 336 (1971). Yet prior to *Navarro II*, our Supreme Court never expressly ruled upon the interstate commerce provision of Section 922(g) of the present federal gun control statute, the FGCA. *See Navarro II*, 212 A.3d at 32 ("Our research has revealed no binding case with similar facts that addresses the issue raised here.").

[10] Notably, Congress may only prohibit individual possession of firearms where there is a nexus to interstate commerce. *Bass*, 404 U.S. at 336. Absent proof of an interstate commerce connection, the U.S. Supreme Court has declined to extend Congress's authority to encompass regulation of the "mere possession" of firearms. *Id.* at 350. Such interpretation would be a "dramatic[] intru[sion] upon traditional state criminal justice." *Id*.

6

that was not "wholly without precedent." *Fiore*, 757 A.2d at 848-849 (internal citation omitted); *see Scarborough*; *Bass*. Accordingly, *Navarro II* is retroactive as of the date of the FGCA's enactment and controlling here.

Therefore, the ALJ was required to dispose of all the necessary requirements of the statutory plain language under both statutes, including rendering a finding as to whether a nexus existed between the requested firearm and interstate commerce pursuant to Section 922(g)(9) of the FGCA. Despite its focus before this Court on the UFA, the PSP denied Respondent's application under *both* the UFA and the FGCA provisions. As such, the ALJ's analysis would have been incomplete and forced our remand had it omitted a finding as to the element of interstate commerce. *See Navarro I* (vacating and remanding back to the ALJ without an express finding as to the interstate commerce element under Section 922(g) of the FGCA). Further, and of critical import here, even if the PSP had only cited Section 6105(c)(9) of the UFA to deny Respondent's application, this violation triggers Section 922(g)(9) of the FGCA; therefore, the ALJ could not ignore the element of interstate commerce.

*B. Section 6105(c)(9) of the UFA requires proof of "interstate commerce"*

The PSP also argues that "interstate commerce" is not required by the plain language of the UFA. Again, we disagree.

Statutory interpretation presents a question of law; thus, our standard of review is *de novo*, and our scope of review is plenary. *J.C.B. v. Pa. State Police*, 35 A.3d 792, 794 (Pa. Cmwlth. 2012). Our primary objective is "to ascertain and effectuate the intention of the General Assembly," which is best indicated by the plain language of a statute. *Navarro II*, 212 A.3d at 32. Thus, absent ambiguity in the statutory language, we shall "construe words and phrases according to their

7

common and approved usage" and endeavor "to give effect to all its provisions so that no provision is mere surplusage." *Pa. State Police v. Sama*, 209 A.3d 1155, 1159 (Pa. Cmwlth. 2019).

Section 6105(c)(9) of the UFA prohibits firearm possession following the commission of certain crimes.[11] Rather than define expressly or list those crimes, the UFA adopts the prohibitory language set forth in Section 922(g)(9) of the FGCA, which prohibits anyone who "has been convicted in any court of a misdemeanor crime of domestic violence" from possessing a firearm that has been *"in or affecting [interstate] commerce."* 18 U.S.C § 922(g)(9) (emphasis added).[12]

Although we acknowledge the phrase "interstate commerce" is nowhere to be found within Section 6105 of the UFA, our plain language analysis does not end there. We cannot ignore that Section 6105(c)(9) expressly imports the

---

[11] Specifically, Section 6105(c)(9) prohibits firearm possession by:

A person who is prohibited from possessing or acquiring a firearm under 18 U.S.C. § 922(g)(9). If the offense which resulted in the prohibition under 18 U.S.C. § 922(g)(9) was committed, as provided in 18 U.S.C. § 921(a)(33)(A)(ii) (relating to definitions), by a person in any of the following relationships:

    (i)    the current or former spouse, parent or guardian of the victim;

    (ii)    a person with whom the victim shares a child in common;

    (iii)    a person who cohabits with or has cohabited with the victim as a spouse, parent or guardian; or

    (iv)    a person similarly situated to a spouse, parent or guardian of the victim;

then the relationship need not be an element of the offense to meet the requirements of this paragraph.

18 Pa.C.S. § 6105(c)(9).

[12] Under the FGCA, a misdemeanor crime of domestic violence is defined as an offense with "the use or attempted use of physical force, or the threatened use of a deadly weapon," committed by, *inter alia*, a current or former romantic partner, spouse, or similarly situated person in cohabitation. 18 U.S.C. § 921(a)(33)(A)(ii).

8

requirements of Section 922(g)(9) of the FGCA. Thus, the interstate commerce element is *automatically* triggered by Section 6105(c)(9) of the UFA. In other words, an individual cannot violate Section 6105(c)(9) of the UFA without violating Section 922(g)(9) of the FGCA. Accordingly, bound by the plain language of the UFA and the FGCA, proof of the interstate commerce element is required to satisfy a firearm application denial under Section 6105(c)(9) of the UFA.

### C. Remand is appropriate

In the alternative, the PSP argues this matter should be remanded. On this issue, we agree. Because this matter was pending at the time *Navarro II* was decided, we remand to the ALJ to hold an evidentiary hearing for the parties to present evidence and argument on the element of interstate commerce. *See, e.g.*, *Kline v. Travelers Pers. Sec. Ins. Co.*, 223 A.3d 677, 691 (Pa. Super. 2019) (vacating an order of the trial court and remanding based on new Pennsylvania Supreme Court precedent given retroactive effect);[13] *Commonwealth v. Prop. Located at 2504 U.S. Highway 522 North* (Pa. Cmwlth., No. 1686 C.D. 2017, filed October 23, 2018), 2018 WL 5260550 (unreported) (remanding to the trial court because it did not "have the benefit of our Supreme Court's clarification" on the relevant issue from a decision that was issued the day the trial court heard and decided the matter).[14,15]

---

[13] Superior Court decisions "are not binding on this Court, but they offer persuasive precedent where they address analogous issues." *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

[14] We may cite unreported decisions for their persuasive value under Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code § 69.414.

[15] Although this Court did not order a remand in *Germantown Cab Co. v. Phila. Parking Auth.*, (Pa. Cmwlth., No. 962 C.D. 2016, filed August 18, 2017), 2017 WL 3567916, slip op. at 4 n.7, the case is distinguishable. In that case, we declined to remand in the interest of preserving judicial economy and party resources because a change in precedent had only created a question of law. *Id.* Here, unlike *Germantown Cab*, the decision in *Navarro II* creates a question of both law and fact. Stated otherwise, additional evidence, *e.g.*, whether the firearm ever crossed state

9

## IV. CONCLUSION

Accordingly, to satisfy a denial of Respondent's firearm application, the PSP was required to submit evidence that the firearm was in or affected interstate commerce. A thorough and sufficient analysis of law and fact required the ALJ to make a finding on the interstate commerce element of the FGCA, due to the plain language of the statutes, which implicitly (Section 6105(c) of the UFA) and expressly (Section 922(g) of the FGCA) requires proof the firearm was in or affecting interstate commerce. Our Supreme Court addressed the interstate commerce element of the FGCA by majority opinion for the first time in *Navarro II*, requiring proof from the PSP that the applicant's firearm was in interstate or foreign commerce to uphold a firearm application denial. Because *Navarro II* was decided after the parties presented evidence, we are compelled to vacate and remand to the ALJ for an evidentiary hearing, limited to allowing evidence and arguments on the sole issue of interstate commerce.

_____
LORI A. DUMAS, Judge

---

lines, is required to determine the question of law, *i.e.*, whether a nexus exists between Respondent's firearm and interstate commerce.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania State Police,            :
                        Petitioner    :
                                      :
        v.                            :    No. 918 C.D. 2020
                                      :
Richard Madden, Jr. (Office of        :
Attorney General),                    :
                        Respondent    :

# **O R D E R**

AND NOW, this 21st day of October, 2022, in light of our Supreme Court's decision in *Navarro v. Pennsylvania State Police*, 212 A.3d 26 (Pa. 2019), the order of the Administrative Law Judge, Office of Attorney General, entered August 21, 2020, in the above-captioned matter is VACATED, and the case is REMANDED to the ALJ for further proceedings consistent with the attached opinion. Jurisdiction relinquished.

LORI A. DUMAS, Judge