J-A02008-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOSEPH PATRICK BENNETT | : | No. 516 WDA 2022 |

Appeal from the Judgment of Sentence Entered April 11, 2022
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-CR-0000396-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JOSEPH PATRICK BENNETT | : | |
| | : | |
| Appellant | : | No. 620 WDA 2022 |

Appeal from the Judgment of Sentence Entered April 11, 2022
In the Court of Common Pleas of Washington County Criminal Division at
No(s): CP-63-CR-0000396-2020

BEFORE:  BOWES, J., MURRAY, J., and PELLEGRINI, J.[*]

MEMORANDUM BY BOWES, J.:                    **FILED:  May 16, 2023**

Joseph Patrick Bennett ("Bennett") and the Commonwealth of

Pennsylvania ("Commonwealth") cross-appeal from the judgment of sentence

of twelve months of probation, which was imposed after the trial court

_____

[*]  Retired Senior Judge assigned to the Superior Court.

convicted Bennett of materially false written statement, unsworn falsification to authorities, and statement under penalty, in connection with Bennett's attempted purchase of a firearm.[1]  We affirm.

On July 8, 2019, Bennett sought to purchase a .9mm pistol from Ace Sporting Goods in Washington County, Pennsylvania.  To do so, Bennett was required to complete two applications, one federal and one state.  Bennett first completed the federal application by filling out Form 4473 from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF").  Of relevance to this appeal, Question 11.c. asked the following:

> c. Have you ever been convicted in any court of a **felony**, or any other crime for which the judge could have imprisoned you for more than one year, even if you received a shorter sentence including probation? (*See Instructions for Questions 11.c.*)

Commonwealth's Exhibit 1 (ATF Form 4473, 7/8/19, at 1) (emphasis in original).

Bennett answered "yes" because in 2005, he had pled guilty to driving under the influence ("DUI") and involuntary manslaughter based upon a fatal vehicular crash.  Bennett had received a sentence of thirteen to sixty months of incarceration for involuntary manslaughter and a concurrent term of forty-eight hours to six months for DUI.  He was deemed eligible for boot camp and served approximately eleven months in jail, with the remainder of the sentence being served on parole.

---

[1] This Court consolidated the above-captioned appeals as cross-appeals.

Eric Flint, an employee of Ace Sporting Goods, oversaw Bennett's application process. Upon completing ATF Form 4473, Bennett handed it to Mr. Flint. Although Mr. Flint did not recall the specific application, he testified to his regular, unwavering practice wherein if an applicant answers yes to a disqualifying question, such as Question 11.c., he asks the applicant to confirm the answer. According to Bennett, at this point he explained the 2005 guilty plea to Mr. Flint and, based upon his explanation, Mr. Flint advised him to change his answer to Question 11.c. to "no." Mr. Flint, contrarily, testified that he has never provided advice to an applicant on how to answer a question, instead always referring applicants to the appendix within ATF Form 4473 for clarification. If an applicant decides to change an answer based upon an initial misreading of the question or instructions, Mr. Flint testified that he will advise the applicant to initial and date the change. Ultimately, Bennett changed his answer to Question 11.c. to "no" and initialed and dated the change. Using the answers from ATF Form 4473, Mr. Flint completed the state application, Form SP 4113. After submitting the forms to the Pennsylvania State Police ("PSP") Instant Check System, Bennett's application was denied. As a result, no sale occurred.

Approximately five months later, Bennett was charged with materially false written statement, unsworn falsification to authorities, and statement under penalty. He proceeded to a nonjury trial and, after taking the matter under advisement, the trial court convicted Bennett of all three charges. On April 8, 2022, the trial court held a sentencing hearing, wherein it had the

benefit of a pre-sentence investigation ("PSI") report and five character witnesses who testified on Bennett's behalf. The court sentenced Bennett to concurrent sentences of twelve months of probation at each count, with the first six months of his probation for materially false written statement to be served on electronic home monitoring ("EHM").

Both the Commonwealth and Bennett filed post-sentence motions for relief. The Commonwealth filed a motion to modify sentence alleging that the court improperly sentenced Bennett below the sentencing guidelines for his conviction of materially false written statement without proper justification. Bennett sought relief in the form of judgment of acquittal as to his conviction for materially false written statement based upon the Commonwealth's failure to prove that the firearm sought to be purchased had been moved in interstate commerce. Additionally, Bennett argued that the evidence presented did not support a finding of guilt as to any of the charges, and that the trial court erred in sustaining a hearsay objection lodged by the Commonwealth.

On May 2, 2022, the Commonwealth filed a notice of appeal to this Court.[2] On May 3, 2022, the trial court denied both post-sentence motions.

---

[2] "A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof." Pa.R.A.P. 905. Therefore, we consider the Commonwealth's appeal as if filed the same day the trial court denied the post-sentence motions, May 3, 2022.

Thereafter, Bennett timely filed a notice of appeal.[3]  The trial court did not order the Commonwealth or Bennett to file concise statements pursuant to Pa.R.A.P. 1925(b).  Similarly, the trial court did not issue a Rule 1925(a) opinion, instead relying upon its May 3, 2022 opinion and order disposing of the parties' post-sentence motions.  Bennett raises the following issues for our consideration:

I.      Whether the Commonwealth failed to introduce sufficient evidence to establish Appellant's guilt for the offense of Materially False Written Statement, 18 Pa.C.S. § 6111(g)(4)(ii), where it did not establish that Appellant intentionally or knowingly made a false written statement and failed to introduce sufficient evidence to establish Appellant's guilt for the offense of Unsworn Falsification to Authorities, 18 Pa.C.S. §§ 4904(a)(1) and 4904(b), and where it did not establish that Appellant either intended to mislead a public servant or intentionally or knowingly made a false statement which he did not believe to be true?

II.     Whether the evidence was insufficient on all charges where the Commonwealth failed to prove that the handgun that was the subject of the attempted purchase was moved in interstate or foreign commerce rendering 18 U.S.C. § 922 (the provision related to the question alleged to have been falsely answered) inapplicable, and Appellant is not otherwise precluded from owning or possessing a firearm under Pennsylvania law?

_____

[3]  Bennett did not designate his appeal as a cross-appeal of the Commonwealth's appeal.  Before this Court, however, Bennett asked this Court to consolidate the appeals.  This Court issued a rule to show cause order as to whether Bennett's appeal was a cross-appeal and, assuming that being the case, whether the parties objected to Bennett being designated as the Appellant/Cross-Appellee and the Commonwealth as the Appellee/Cross-Appellant.  Bennett confirmed the cross-appeal status of his appeal and neither party objected to the proposed designations.  Therefore, we consolidated the two appeals as cross-appeals and so designated the parties.

III. Whether 18 U.S.C. § 922(g)(1) is unconstitutional as applied rendering Appellant's prior involuntary manslaughter conviction a non-disqualifying offense and rendering his alleged false statement on the ATF form 4473 immaterial and not made with intent to mislead a public servant?

IV. Whether the trial court erred in precluding as impeachment evidence testimony of David Pegher and Appellant, regarding statements and instructions given by Eric Flint to change Appellant's answer on ATF form 4473, on the erroneous basis that the testimony was hearsay, where Flint claimed that he would never instruct a person to change his answer and the testimony not being offered for the truth of the matter asserted by Flint?

Bennett's first brief at 9-10.

For its part, the Commonwealth sets forth the following issues for our review:

I. Should Appellant's conviction be affirmed where adequate record evidence supports it, the Second Amendment argument is meritless and waived, and the impeachment evidence was admitted at trial?

II. Did the sentencing court abuse its discretion by imposing a sentence that was below the mitigated range of the sentencing guidelines and inconsistent with the Sentencing Code where it relied upon irrelevant and impermissible factors, *i.e.*, where the court (a) improperly questioned the policy behind federal criminal firearms legislation; (b) improperly discounted the seriousness of the state offenses of which Appellant was convicted in contravention of state law and the sentencing guidelines; (c) improperly considered it mitigating that Appellant showed no remorse and gave Appellant double credit for his lack of criminal history; and (d) failed to cite valid reasons for deviating from the guidelines and interjected its own sense of justice?

Commonwealth's brief at 14 (capitalization altered).

**Sufficiency of the Evidence – *Mens Rea***

We begin with Bennett's first sufficiency challenge, which we consider within the following legal parameters. "In reviewing a challenge to the sufficiency of the evidence, we must determine whether the evidence, and all reasonable inferences deducible therefrom, viewed in the light most favorable to the Commonwealth as the verdict winner, are sufficient to establish all the elements of the offense beyond a reasonable doubt." *Commonwealth v. Kennedy*, 789 A.2d 731, 732 (Pa.Super. 2001) (citation omitted). We observe that "[t]he facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence[.]" *Id*. Rather, any question of "doubt is for the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Id*. (citation omitted).

Bennett challenges the sufficiency of the evidence for the *mens rea* element as to all three of his convictions. With regard to subsection (g) of materially false written statement for which Bennett was convicted, the Crimes Code provides:

> (4) [a]ny person, purchaser or transferee commits a felony of the third degree if, in connection with the purchase, delivery or transfer of a firearm under this chapter, he knowingly and intentionally:
>
> . . . .
>
> (ii) makes any materially false written statement, including a statement on any form promulgated by Federal or State agencies[.]

- 7 -

18 Pa.C.S. § 6111(g).

Section 4904, which governs his unsworn falsification to authorities and statement under penalty convictions, provides in pertinent part as follows:

**(a) In general.**--A person commits a misdemeanor of the second degree if, with intent to mislead a public servant in performing his official function, he:

(1) makes any written false statement which he does not believe to be true. . . .

**(b) Statements "under penalty".**--A person commits a misdemeanor of the third degree if he makes a written false statement which he does not believe to be true, on or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable.

18 Pa.C.S. § 4904. The Crimes Code further provides as follows regarding the relevant kinds of culpability:

(1) A person acts intentionally with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

(ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

(2) A person acts knowingly with respect to a material element of an offense when:

(i) if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

(ii) if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.

. . . .

18 Pa.C.S. § 302(b).

According to Bennett, the evidence presented did not establish that he intentionally or knowingly answered Question 11.c. falsely. *See* Bennett's brief at 24. Rather, Bennett maintains "that he did not intend to defraud anyone and was confused by the question at issue." *Id*. at 23 (citation omitted). He further claims that the evidence was insufficient because it equally supported a finding that he was confused by the question. In support, Bennett relies on *Kennedy*, *supra*, and *Commonwealth v. Bachner*, 240 A.3d 925 (Pa.Super. 2020) (non-precedential decision). The Commonwealth, on the other hand, finds those cases distinguishable and contends that the evidence established Bennett's *mens rea*. *See* Commonwealth's brief at 30.

We begin with a discussion of *Kennedy* and *Bachner*. In *Kennedy*, the appellant challenged the sufficiency of the evidence to support his conviction of unsworn falsification to authorities in connection with the Pennsylvania application in use at that time. When completing that form, Kennedy answered the following questions in the negative:

29. Have you ever been convicted of a crime enumerated in Section 6106(b), or do any of the conditions under Section 6105(c) apply to you? (READ INFORMATION ON BACK PRIOR TO ANSWERING). ____ Yes ____ No

- 9 -

30. Are you now charged with, or have you ever been convicted of a crime punishable by imprisonment for a term exceeding one year? (This does not include federal or state offenses pertaining to antitrust, unfair trade practices, restraints of trade, or regulation of business; or state offenses classified as misdemeanors and punishable by a term of imprisonment not to exceed two years). (READ BLOCK 30 INFORMATION ON BACK PRIOR TO ANSWERING). ____ Yes ____ No

31. Have you ever been convicted of an offense under the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act? ____ Yes ____ No

32. Are you an individual who, within the past ten years, has been adjudicated a delinquent for a crime enumerated in Section 6105 (REFER TO INFORMATION ON BACK), or for an offense under The Controlled Substance, Drug, Device, and Cosmetic Act? ____ Yes ____ No

**Kennedy**, **supra** at 733.  After submitting the application, the reviewing authorities learned that Kennedy had been convicted of possessing a small amount of marijuana and drug paraphernalia.

At his jury trial, Kennedy testified that he answered the questions to the best of his knowledge and that the erroneous answer was a mistake.  **Id**. at 734 ("His actions were the product of 'confusion' over when to reference the back of the application in answering the questions.").  Specifically,

his response to Question 31 was influenced by the content of Question 29, which directed him to the back of the application before answering whether he had been convicted of any of the thirty-five offenses under [§] 6105(b) or [§] 6105(c), which prohibits licensure when, inter alia, a person has been convicted of an offense under The Drug Act "punishable by a term of imprisonment exceeding two years."

[Kennedy] interpreted [§] (c)(2) of [§] 6105 to be applicable to Questions 29 **and** 31.  In other words, because [Kennedy] had

- 10 -

not been convicted of anything that carried a term of over two years, he answered no to Question 31.

*Id*. at 734 (emphasis in original).

On appeal, this Court found the applicable state form "to contain internal inconsistencies, which leaves the reader in a quandary when to examine the back of the document in advance of answering questions on the face of the application." *Id*. Moreover, we found it "uncontroverted that the only evidence reflective of the state of mind of the accused was generated by [Kennedy], who stated unequivocally his actions were the product of confusion and not a knowing intent to falsify information." *Id*. Thus, the evidence of Kennedy making a written false statement while not believing it to be true was "so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Id*. (citation omitted). Accordingly, we vacated Kennedy's judgment of sentence and reversed his conviction because we concluded that "the jury ignored the unrefuted account that [Kennedy's] act of filling out [the form] was the product of a mistake and not the knowing and intentional act of one seeking to deceive." *Id*. (citation and footnote omitted).

In *Bachner*, the defendant challenged the sufficiency of the evidence to sustain his conviction for unsworn falsification to authorities in connection with his completing the federal and state applications to purchase a firearm. On ATF Form 4473, Bachner answered Question 11.c. "no," but also wrote a question mark and his initials next to the question. *Bachner*, *supra* (non-

precedential decision at 2-3).  On the state application, Bachner answered the following in the negative:

> [Question 32:] ARE YOU NOW CHARGED WITH, OR HAVE YOU EVER BEEN CONVICTED OF A CRIME PUNISHABLE BY IMPRISONMENT FOR A TERM EXCEEDING ONE YEAR?  THIS IS THE MAXIMUM SENTENCE THAT YOU "COULD HAVE RECEIVED," NOT THE ACTUAL SENTENCE YOU DID RECEIVE. (THIS DOES NOT INCLUDE FEDERAL OR STATE OFFENSES PERTAINING TO ANTITRUST, UNFAIR TRADE PRACTICES, RESTRAINTS OF TRADE, OR REGULATION OF BUSINESS; OR STATE OFFENSES CLASSIFIED AS MISDEMEANORS AND PUNISHABLE BY A TERM OF IMPRISONMENT NOT TO EXCEED TWO YEARS.) (READ INFORMATION ON BACK PRIOR TO ANSWERING.)

*Id*. (non-precedential decision at 3).  In 2013, Bachner had been convicted of bribery and official oppression, and sentenced to three years of probation.  Thus, he should have answered yes to both questions.  His application was denied, and his appeal of that denial was to no avail.  Thereafter, he was charged with unsworn falsification to authorities and materially false written statement based on the answers he submitted on the forms.

Bachner proceeded to a bench trial, where the Commonwealth presented its entire case by stipulation to the forms, Bachner's 2013 conviction, and the investigating officer's affidavit of probable cause.  Bachner was the only witness at trial, and he testified to his confusion regarding the questions and the impact of his convictions on his gun rights.  The trial court found Bachner guilty of unsworn falsification to authorities but not guilty of materially false written statement.

On appeal, we noted that due to Bachner's felony bribery conviction, it was undisputed that he should have answered "yes" to the above questions. As it pertained to Bachner's sufficiency challenge, "[t]he only issue for our review therefore [wa]s whether the evidence was sufficient to establish that Appellant did not believe his answers to be true when he answered 'No' to both questions." *Id*. (non-precedential decision at 11). In conducting this review, we found **Kennedy**, **supra**, analogous.

> [A]s with the appellant in **Kennedy**, 789 A.2d at 734, [Bachner] was the sole witness, meaning that it was also "uncontroverted" in the current case "that the only evidence of the state of mind of the accused was generated by Appellant, who stated unequivocally his actions were the product of confusion and not a knowing intent to falsify information." The Commonwealth presented no direct evidence of [Bachner's] intent or belief in answering the questions, whereas [Bachner] testified that he thought that his answers were "appropriate[.]" N.T. at 14.

**Bachner**, **supra** (non-precedential decision at 13-14). Bachner's confusion was evinced not only by his trial testimony, but by contemporaneously writing a question mark next to Question 11.c. and, on cross-examination regarding his comprehension of the language of 11.c., repeatedly stating that he did not understand. *Id*. Additionally, we found that

> [Bachner] had several reasons for answering "No" to ATF Form Question 11.c. and PSP Form Question 32 in good faith. First, his firearms license had been renewed subsequent to his 2013 convictions; in fact, the sheriff's office had sent the renewal form to him. Thus, he had no reason to believe that his 2013 convictions disqualified him from anything relating to firearms or that he would not have the same rights as a normal citizen again.
>
> Second, [Bachner] testified that he never knew what the penalty could have been for bribery and official oppression, that no one

ever told him, and that he couldn't find it anywhere. If he genuinely did not know that his convictions could have resulted in imprisonment for more than one year—and the Commonwealth presented no evidence challenging [Bachner's] assertion, then his answers to ATF Form Question 11.c. and PSP Form Question 32, while misguided, were not deceitful.

*Id*. (non-precedential decision at 14) (cleaned up).

Thus, as in ***Kennedy***, this Court concluded that the trial court had "ignored the unrefuted account that [Bachner's] incorrect answers on the ATF Form and the PSP Form were the product of a mistake and not the knowing and intentional act of one seeking to deceive." ***Bachner***, ***supra*** (non-precedential decision at 15). We observed that he "may have been negligent in answering—or failing to research how best to answer—ATF Form Question 11.c. and PSP Form Question 32, but there is insufficient evidence to support a finding beyond a reasonable doubt that [Bachner] believed his written false statements to be untrue." ***Id***. Therefore, we vacated his judgment of sentence and reversed his convictions.

Bennett contends that the underlying case is akin to ***Bachner***, emphasizing that there was "no testimony to refute Bennett's testimony that he was confused about the question" and, as in ***Bachner***, "the trial court did not find Bennett's testimony to lack credibility." Bennett's brief at 26. We disagree. First, Bennett's testimony was not unrefuted as the Commonwealth presented the testimony of Mr. Flint. Moreover, unlike in ***Bachner*** where his firearms license had been renewed following his disqualifying convictions, there was no evidence that Bennett had been led to believe that he was

- 14 -

entitled to possess a firearm notwithstanding his conviction.  As to the court's credibility determinations, we do not have an explicit explanation from the trial court in this regard, because Bennett did not raise this sufficiency argument prior to this appeal and the trial court did not order a Rule 1925(b) statement or author a responsive Rule 1925(a) opinion.  While the court's credibility determinations are not dispositive given our standard of review, we nonetheless note that in denying the parties' post-sentence motions, the trial court explained that it "hear[d Bennett's] voice, albeit the [c]ourt found that the Commonwealth met its burden of proof and **did not accept** [**Bennett's**] **arguments**."  Trial Court Order, 5/3/22, at 7 (emphasis added).  In other words, the court found Bennett's testimony to lack credibility.

Indeed, upon review, we conclude that Bennett's case is distinguishable from **Kennedy** and **Bachner**, and is instead more akin to **Commonwealth v. Sasse**, 226 A.3d 637 (Pa.Super. 2020) (non-precedential decision).  Unlike in **Kennedy**, the forms in **Sasse** did not contain internal inconsistencies, and the evidence established that Sasse intended to provide false information on the federal and state forms.

> The Commonwealth established that Sasse answered "no" on the ATF and PSP forms when asked whether he was subject to a PFA. Further, he answered "no" when asked whether he had ever been convicted of a misdemeanor crime of domestic violence. . . . Sasse admitted to reading the forms, including the instructions. Trooper Brown testified that Sasse told him that he believed the PFA was for two, not three, years, and that he did not believe the disorderly conduct conviction was a misdemeanor crime of domestic violence.  Sasse testified to the same at trial.  However, the jury heard testimony and received evidence establishing that

- 15 -

the PFA was for three, not two years, and that Sasse was convicted of disorderly conduct as a misdemeanor, and that he knew the conduct underlying the conviction included fighting with his former spouse. Such evidence is sufficient to establish that Sasse intended to provide false information and that he knew the answers to be false.

*Sasse*, *supra* (non-precedential decision at 19-20) (cleaned up).

In the instant case, Bennett testified that at the time he filled out ATF Form 4473, he was aware that he had been sentenced to thirteen to sixty months of incarceration for his misdemeanor conviction of involuntary manslaughter. *See* N.T. Nonjury Trial, 6/10/21, at 159. Although he was released early, he knew that he was on parole for the remainder of the sixty-month sentence and that if he violated his parole he could spend the remainder of his sentence in jail. *Id*. at 187-88. In fact, explicitly based upon this knowledge that he could have and in fact did receive a sentence greater than one year, Bennett initially correctly answered Question 11.c. "yes." *Id*. at 167. Moreover, on cross-examination, Bennett acknowledged that he understood the question. *Id*. at 179.

Bennett attempted to impugn his understanding of Question 11.c. by testifying that he believed the question was confusing because he did not have a felony, he did not know his maximum sentence, and he was not sure if a guilty plea counted as a conviction. *Id*. at 175, 179. According to Bennett, after he turned in the form, Mr. Flint asked why he had answered "yes" to Question 11.c. *Id*. at 168. Then, "based off of what I told him that I didn't have a felony and **the sentence was basically – the time I served was**

- 16 -

**less than a year** that I could cross that off and change the answer to no and initial, and then, I believe, he said something along the line of, like, we'll send it in and see what comes back[.]" *Id*. at 170 (emphasis added). Finally, he maintains that he did not intend to defraud anyone and that he relied on Mr. Flint in changing his answer because Mr. Flint had more experience with ATF Form 4473 and the sale of firearms. *Id*. at 174, 176, 184.

However, Bennett's version of events was not unrebutted, as it was in *Kennedy* and *Bachner*. We conclude that an examination of the entirety of the evidence, viewed in the light most favorable to the Commonwealth, supported Bennett's convictions. In particular, the Commonwealth established that Bennett understood Question 11.c. and answered it honestly and correctly at the outset because he could have and did receive a sentence of greater than one year. It was only after he turned ATF Form 4473 into Mr. Flint, who asked Bennett to confirm his disqualifying answer of "yes" to Question 11.c., that Bennett changed his answer to "no." Mr. Flint testified that he never advised customers how to answer the forms, but instead would confirm any disqualifying answers, refer customers to the appendix if they had any questions, and advise them on how to change their answer if they wanted to do so. Pursuant to this evidence, it was Bennett's choice to change his answer, despite knowing that he in fact had received a sentence of greater than one year. The change does not evince confusion, but supports an intent to deceive.

Moreover, even if the trial court had credited Bennett's testimony that Mr. Flint **did** advise him to change his answer, that does not negate Bennett's *mens rea*. Indeed, Mr. Flint purportedly advised Bennett to answer "no" based upon Bennett's incorrect and self-serving recitation of his sentence being **less** than one year, which is contrary to his testimony of what he understood his sentence to have been and is belied by the fact that he had answered "yes" to Question 11.c. in the first place.

Based on the foregoing, we conclude that the evidence was sufficient to sustain Bennett's convictions and that he answered "no" to Question 11.c. on ATF Form 4473 when he knew the correct answer to be "yes," to defraud the system in applying to purchase a firearm. Appellant's first sufficiency challenge merits no relief.

### Sufficiency of the Evidence – Interstate Commerce

Bennett next argues that the Commonwealth failed to sustain its burden as to all charges because it did not establish that the firearm Bennett sought to purchase "had a nexus with interstate or foreign commerce" and he was not otherwise prohibited from possessing or purchasing a firearm pursuant to 18 Pa.C.S. § 6105. **See** Bennett's brief at 27. Bennett relies on **Navarro v. Pennsylvania State Police**, 212 A.3d 26 (Pa. 2019), in support. **See** Bennett's brief at 28. In **Navarro**, our Supreme Court held that when declining to return a firearm on the basis of 18 U.S.C. § 922(g), the PSP must establish that the firearm had moved in interstate or foreign commerce.

Critically, **Navarro** concerns what the Commonwealth must prove before denying access to a firearm, not what it must prove to sustain convictions stemming from an applicant lying on ATF Form 4473 to purchase a firearm. Simply put, Bennett ignores the critical fact that none of the crimes for which he was convicted contains such an element. Therefore, the holding in **Navarro** is not remotely pertinent.

Rather, Bennett's qualms with ATF Form 4473, and the requirement of an interstate commerce nexus when an applicant is otherwise not prohibited from possessing a firearm pursuant to § 6105, is really a challenge to the PSP's conclusion that Bennett was disqualified from purchasing a firearm. **See** Trial Court Order, 5/3/22, at 16 ("The result of [Bennett's] application is immaterial to the crimes for which he was convicted. Again, this argument is better fit for an appeal of the denial to purchase a firearm, not a conviction for making false statements on the application to do so."). As noted, Bennett did not appeal the denial of his firearm application and the propriety of the basis for that denial simply is not before us. Accordingly, he is not entitled to relief on this claim.

**Unconstitutionality of 18 U.S.C. § 922(g)(1) as applied to Bennett**

Next, Bennett argues that § 922(g)(1) is unconstitutional as applied to him and violative of his Second Amendment rights, such that his prior conviction would not be a disqualifying offense and, as a consequence, his false statement on ATF Form 4473 would not be material or made with intent

to mislead a public servant. **See** Bennett's brief at 30, 32. The Commonwealth urges us to find Bennett's constitutional arguments waived for failure to preserve them at trial and, moreover, for failing to notify the United States Attorney General of the challenge. **See** Commonwealth's brief at 38-39. Bennett did not respond to the Commonwealth's waiver argument in his second brief. Upon review, we agree with the Commonwealth and conclude that Bennett has waived this issue by failing to preserve it at trial.[4] **See Commonwealth v. Little**, 903 A.2d 1269, 1272 (Pa.Super. 2006) ("While a claim that a statute is unconstitutional certainly may result in a court's refusal to apply the statute as written, such a claim must be raised and preserved at trial; it cannot be raised for the first time on appeal. Pa.R.A.P. 302(a).").

**Hearsay**

Finally, Bennett argues that "[t]he trial court erred in sustaining the Commonwealth's hearsay objection to testimony of David Pegher where the statement was not being introduced for its truth and was admissible impeachment evidence" against Mr. Flint. Bennett's brief at 33-34. We review this claim mindful of the following.

_____

[4] Even if not waived, we observe that, once again, whether Bennett should be disqualified from owning a firearm is not an issue before this Court. As aptly observed by the Commonwealth, Bennett "could have honestly answered Question 11.c. of the ATF Form and then sued to vindicate his asserted Second Amendment rights once he was denied a firearm. [Bennett] instead chose to attempt to game the system and has waited until now, after that attempt failed and he stands convicted to raise his purported rights before this Court." Commonwealth's brief at 42.

The admissibility of evidence is a matter addressed solely to the discretion of the trial court, and may be reversed only upon a showing that the court abused its discretion. For there to be abuse of discretion, the [trial] court must have ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Commonwealth v. Johnson***, 179 A.3d 1105, 1119-20 (Pa.Super. 2018) (cleaned up).

As our Supreme Court has summarized: "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Hearsay evidence is not admissible except as provided by the Pennsylvania Rules of Evidence, [the Pennsylvania Supreme] Court, or by statute." ***Commonwealth v. McCrae***, 832 A.2d 1026, 1034 (Pa. 2003) (cleaned up). "An out-of-court statement is not hearsay when it has a purpose other than to convince the fact finder of the truth of the statement." ***Commonwealth v. Busanet***, 54 A.3d 35, 68 (Pa. 2012).

Here, Bennett sought to have Mr. Pegher testify to the statements he heard Mr. Flint make to Bennett after Bennett initially turned in ATF Form 4473. As detailed *infra*, the Commonwealth objected on hearsay grounds, Bennett claimed the testimony was admissible pursuant to the present-sense-impression exception, and the trial court sustained the objection. On appeal, Bennett argues for the first time that the evidence was admissible to impeach Mr. Flint's testimony "that he would never advise anyone to change their answer when completing ATF Form 4473[.]" Bennett's brief at 34. As Bennett

solely sought to introduce the statements as impeachment evidence and not for the truth of the matter asserted, he contends that the statements were not hearsay and were instead admissible. *Id*. In other words, having abandoned the present-sense-impression exception asserted at trial, Bennett now contends that he did not seek to admit Mr. Flint's statements through Mr. Pegher's testimony for their underlying truth, but "to establish that the statements by Flint were made." *Id*. at 35. "Had Pegher been allowed to testify to the specific contents of Flint's conversation with Bennett, it would have shown that Bennett was being truthful and significantly undermined Flint's testimony." *Id*. at 37.

The trial court, in rejecting this argument in Bennett's post-sentence motion, observed that Bennett was permitted to testify to the statements purportedly made by Mr. Flint. *See* Trial Court Order, 5/3/22, at 10. The Commonwealth, in its brief, observes that Bennett did not offer the testimony as impeachment evidence at trial, but instead asked a "question which called for details of a conversation between two other individuals that had spurious impeachment value." Commonwealth's brief at 46. Moreover, the Commonwealth emphasizes that "the relevant impeachment evidence **was** admitted" and "[t]he trial court did **not** sustain the objection with respect to testimony regarding whether Mr. Flint directed [Bennett] to change his answer on the ATF Form." *Id*.

At trial, the following exchange occurred during Mr. Pegher's direct examination:

[Defense counsel]: Were you present when [Bennett] filled [out ATF Form 4473]?

[Mr. Pegher]: I was in the direct vicinity, yes.

[Defense counsel]: And what occurred?

[Mr. Pegher]: From my recollection of this, when [Bennett] turned the form back in, [Mr. Flint] had done a quick inspection of the form and had noted a specific section where he had a question about one of [Bennett's] answers on the form.

. . . .

[Counsel approached with Form 4473.]

[Defense counsel]: I'm going to show you what has been previously marked as Commonwealth's Exhibit 1. Did you have an opportunity to see that form on July 8, 2019?

[Mr. Pegher]: Aside from, you know, [Bennett] filling out the form and handing it to him, I didn't directly inspect the form myself, no.

[Defense counsel]: Okay. But there was some question about the way he answered one of the questions, and did you hear what the confusion and/or issue was about?

[Mr. Pegher]: Yes, I did.

[Defense counsel]: Okay. What was discussed between Mr. Bennett and Mr. Flint?

[Mr. Pegher]: So there was a discussion about one of the answers involving [Bennett's] criminal background history, and after that there

|                       |                                                                                                                                                                   |
| --------------------- | ----------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|                       | was an at-length discussion between [Mr. Flint] and [Bennett] about the specifics.                                                                                 |
| [Defense counsel]:    | I want you to give us specifics of what you heard and what was said by Mr. Flint and Mr. Bennett during this discussion.                                           |
| [Mr. Pegher]:         | Okay. What I understand is that [Bennett] had given him a detailed background about the incident that occurred to him when he was 19 years of age –                |
| [Objection sidebar]   |                                                                                                                                                                   |
| [Commonwealth]:       | And I'm going to object again, Your Honor. This is all hearsay. This is now what Mr. Bennett is saying to the salesperson. This is exactly why we're here today. Mr. Bennett can testify to what he said – |
| [Defense counsel]:    | Well, then, you know what, I'll ask Mr. Pegher to step down. I'll put Mr. Bennett on, and then I'll call him.                                                       |
| The Court:            | Sure.                                                                                                                                                              |
| [Commonwealth]:       | Well, I'm still going to object to him –                                                                                                                           |
| [Defense counsel]:    | It's a corroborate witness.                                                                                                                                         |
| The Court:            | Hold on, gentlemen. One at a time, please.                                                                                                                         |
| [Commonwealth]:       | Your Honor, I'm not asking to waste time. If Your Honor is going to allow him to testify, I am lodging an objection, but if you're going to allow him to testify differently if he is called after Bennett as opposed to before, then I'd rather – |
| The Court:            | Well, to the extent that – let's take another step down the road. To the                                                                                           |

|  |  |
|---|---|
|  | extent that Mr. Bennett is here and, I suppose, he is going to testify, that's fine. |
| [Defense counsel]: | He's an eyewitness. |
| The Court: | He's an eyewitness. But not what Mr. Flint said. That's hearsay. |
| [Defense counsel]: | Mr. Flint has already testified. He's allowed to undermine and testify. Mr. Flint's indication is I don't remember anything. He was available. He's testified. This is an eyewitness to their witness's own statements. He's permitted to testify. |
| [Commonwealth]: | But the hearsay rule is an exception to the eyewitness – if you're an eyewitness, it's relevant testimony. You can testify to what you saw. The exception being what you heard. What kind of assertions were made in your presence because the policy is that we don't want people to testify to what other persons said. Those persons can come and can testify to their recollection. What Mr. Flint said is absolutely hearsay. I think what Mr. Bennett said is also, for this witness to testify – |
| [Defense counsel]: | I just want to make sure that this is clear on the record. It's the Commonwealth's assertion that an eyewitness is not permitted to testify in contradiction to what their own witness testified to. That's their assertion today. |
| [Commonwealth]: | Hearsay is not admissible without an exception. What's the exception? |
| The Court: | Right. What's the exception. |
| [Defense counsel]: | We'll say present sense impression. He's listening to what Mr. Flint is describing |

and telling Mr. Bennett to do upon being proffered a form with a question answered yes if he knows will preclude the sale of a firearm.

The Court: To the extent what Mr. Flint maybe directed him to do, yes, but not word for word. I won't allow word for word.

[Turning back to the direct examination.]

[Defense counsel]: What did Mr. Flint direct Mr. Bennett to do after submission of the form with the question 11c answered yes?

[Mr. Pegher]: After the discussion the direction of [Mr. Flint] was to amend an answer on the form, initial next to it and date the form and to turn it back in so that he could run it through the criminal background check system.

. . . .

[Mr. Pegher]: The ultimate result that came back was that he was denied.

[Defense counsel]: Okay. But you heard – or you were present when Mr. Flint directed Mr. Bennett to change the answer?

[Mr. Pegher]: I was, yes.

[Defense counsel]: Okay. Did Mr. Bennett explain any confusion or state that he was confused by the question?

[Mr. Pegher]: He did, yes.

[Defense counsel]: And he gave, your indication is, a specific description of the incident that occurred in 2005 in regard to his car accident?

[Mr. Pegher]: Yes, he did. A detailed explanation of his particular situation, what he was charged

- 26 -

with, things of that nature, and asked for clarification about what that meant in relation to the question on the form.

[Defense counsel]: And the chronology of this is the form is handed in. It's then given back to Mr. Bennett because he's not going to pass. This discussion occurs. He's directed to change the answer, and then he's denied.

[Mr. Pegher]: That is correct.

N.T. Nonjury Trial, 6/10/21, at 130-137. Subsequently, during Bennett's direct examination, he relayed specific details regarding the conversation he had with Mr. Flint and Mr. Flint's direction to change his answer to "no" for Question 11.c. **See id**. at 168-170.

As discussed *supra*, Bennett contends on appeal that the trial court should have admitted the testimony as impeachment evidence against Mr. Flint. However, a review of the certified record reveals that Bennett argued the testimony was admissible pursuant to the present-sense-impression exception to the rule against hearsay, not that it was non-hearsay admissible as impeachment evidence. Since Bennett did not timely raise the impeachment issue during the trial, he has waived that claim on appeal. **See Commonwealth v. Mollett**, 5 A.3d 291, 311 (Pa.Super. 2010); Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

Even if not waived, we agree with the Commonwealth and the trial court that any error in sustaining the objection was harmless because the court in

fact did hear the alleged conversation between Bennett and Mr. Flint both through Mr. Pegher's testimony, as outlined above, and in more detail during Bennett's testimony. Simply stated, Bennett was permitted to impeach Mr. Flint's testimony that he did not advise Bennett as to how to answer Question 11.c. during both Mr. Pegher's testimony and his own. That the court did not credit this version of events does not negate the fact of its admission. Accordingly, even if not waived, Bennett is not entitled to relief on this claim.

## Discretionary Aspects of Sentencing

Turning to the Commonwealth's appeal, it argues that the trial court abused its discretion when it sentenced Bennett below the sentencing guidelines and relied on impermissible factors. *See* Commonwealth's brief at 49. Such a claim challenges the discretionary aspects of Bennett's sentence, which we review pursuant to the following legal principles.

It is well-settled that, with regard to the discretionary aspects of sentencing, there is no automatic right to appeal.

An appellant challenging the discretionary aspects of a sentence must invoke this Court's jurisdiction by satisfying a four-part test . . . to determine: (1) whether the appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether the appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S. § 9781(b).

The determination of what constitutes [a] substantial question must be evaluated on a case-by-case basis. A substantial

- 28 -

question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process.

***Commonwealth v. McCain***, 176 A.3d 236, 240 (Pa.Super. 2017) (cleaned up).

Here, the Commonwealth filed a timely notice of appeal, preserved the issue in a post-sentence motion for reconsideration, and included a Rule 2119(f) statement within its brief. In its Rule 2119(f) statement, the Commonwealth argues that the trial court: (1) "deviated from the sentencing guidelines such that the sentence imposed is excessively lenient and unreasonable[;]" (2) failed to provide a contemporaneous written statement of reasons for the deviation; and (3) the reasons given at the sentencing hearing were "inadequate and irrelevant." Commonwealth's brief at 26. More specifically, the Commonwealth contends that "it was improper for the sentencing court to . . . consider it mitigating that [Bennett] showed no remorse, . . . fail to cite valid reasons for deviating from the guidelines, and interject its own sense of justice." ***Id***.[5] The Commonwealth has raised a

_____

[5] The Commonwealth also argued that the trial court imposed Bennett's sentence as a result of improperly questioning the policy of the federal Gun Control Act, disagreeing with the assigned offense gravity score for materially false written statement, "improperly discounting the seriousness of the offenses of which [Bennett] was convicted[,]" and double-counting Bennett's lack of criminal history. ***See*** Commonwealth's brief at 56-64. However, the Commonwealth did not raise these arguments before the trial court and,

substantial question. ***See McCain***, ***supra*** at 241 (holding that the Commonwealth raised a substantial question where it alleged that McCain's sentence failed to protect the public and was an "unreasonable departure from the mitigated range of the sentencing guidelines"). Having invoked this Court's jurisdiction, we turn to the merits.

This Court's review of a trial court's sentencing determination is based upon an abuse of discretion standard. ***Id***. "An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." ***Id***. (cleaned up).

The Sentencing Code provides in pertinent part as follows:

> [T]he court shall follow the general principle that the sentence imposed should call for total confinement that is consistent with [§] 9725 (relating to total confinement) and the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant. The court shall also consider any guidelines for sentencing . . . adopted by the Pennsylvania Commission on Sentencing[.] . . . In every case where the court imposes a sentence or resentence outside the guidelines . . . , the court shall provide a contemporaneous written statement of the

consequently, they are waived. ***See*** Pa.R.A.P. 302(a); Pa.R.Crim.P. 721 *Comment* ("Under Rule 721, the Commonwealth's motion for modification of sentence is optional, as long as any discretionary sentencing issue is properly preserved at the time sentence was imposed. Before forgoing trial court review and proceeding with a direct appeal, the attorney for the Commonwealth must therefore be sure that the record created at the sentencing proceeding is adequate for appellate review of the issue, or the issue may be waived.").

reason or reasons for the deviation from the guidelines to the commission, as established under [§] 2153(a)(14) (relating to powers and duties). Failure to comply shall be grounds for vacating the sentence or resentence and resentencing the defendant.

42 Pa.C.S. § 9721(b). As for our review of the trial court's application of these principles, § 9781(d) provides that we must consider the following:

> (1) The nature and circumstances of the offense and the history and characteristics of the defendant.
>
> (2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.
>
> (3) The findings upon which the sentence was based.
>
> (4) The guidelines promulgated by the commission.

> 42 Pa.C.S. § 9781(d). This Court may conclude that a sentence is unreasonable based upon a review of the factors set forth in [§] 9781(d), or based upon a finding that the trial court did not give proper consideration to the general sentencing standards stated in [§] 9721(b).

*McCain*, *supra* at 241 (cleaned up). Finally, "[i]f the sentencing court imposes a sentence that deviates significantly from the guideline recommendations, it must demonstrate that the case under consideration is compellingly different from the 'typical' case of the same offense or point to other sentencing factors that are germane to the case before the court." *Commonwealth v. Robertson*, 874 A.2d 1200, 1213 (Pa.Super. 2005) (citation omitted).

Here, the trial court explained its intention to impose a reduced sentence as follows:

- 31 -

[Bennett's attorney] alluded to the fact that these cases are very problematic, and I would have to agree. I'm not sure if I see any more cases that are more problematic than cases where somebody wants to purchase a firearm and they're rejected, for whatever reason. It's a long form. I know many defendants have said it's confusing. For whatever reason, there's no doubt that there is litigation over these matters.

And I find it very important to note when I was thinking about crafting a sentence, and of course, taking into consideration I had today, what was really the intent of this legislation under the Federal Gun Control Act, which was passed in 1968. And our United States Supreme Court has actually delivered several opinions on this. And they say the following, and this is from *Dickerson v. New Banner Institute*, 460 U.S. 103 (1983). And this case actually was overturned, but for other reasons, so it has nothing [to] do with this. This is a more recent pronouncement.

They say the following: "This followed from the statute's plain language and from a legislative history that, as we have repeatedly observed, makes clear that, 'Congress sought to rule broadly to keep guns out of hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a threat to society.'"

And when they passed this law, unlike a somewhat, for lack of a better term, companion law in the Commonwealth of Pennsylvania, but when the federal government did this, they did not specifically list those crimes, which they said are crimes whereby someone cannot be trusted to possess a firearm without becoming a threat to society.

They defined it as either a felony, and then it was later amended for certain reasons, to misdemeanors or crimes where you could be punished by more than one year. But nevertheless, the intent was for the purpose I just mentioned, and I find that to be very important in delivering a decision today.

And so what I've learned today, and more than just from today, . . . is that I do not believe that a standard range sentence is appropriate here. Because even though I did find that the Commonwealth met their burden of proof, and that there should be a conviction, but the sentence under the circumstances that we have before us today, the goals would not be achieved. Based

upon the definition as our Supreme Court has found, that is that they may not be trusted to possess a firearm without becoming a threat to society. And from what I have seen, that apparent threat is not present for a standard range sentence.

Mr. Bennett was convicted, due to a crime that occurred when he was 19 years old. And this, what happened now, is 16 years later. He has lived, at least from all the evidence I can see, an exemplary life.

Whether Congress wants to make a determination of the prior crime that he committed as one that falls under the category that they legislated, it's interesting that they don't legislate what those specific crimes are. It's a very broad brush, and that is a bit concerning to this court when it hears about the facts of a particular defendant. And it's unlike our state law, which the legislature has discussed the specific crimes which somebody would not be eligible for and laid them out.

Today is not the time to debate, and I agree with [the Commonwealth], the conviction. I did what I had to do based upon what was presented to me. That's the consequence of the trial, and now I have to do what I think is right, based upon what I read in the PSI, and the arguments I've heard today.

And that is, despite the fact that [Bennett] does not believe that he committed a crime, all defendants are entitled to have their trial, and just because a jury of 12 persons or a judge convicts them does not require them to tell me at a sentencing hearing that they're sorry or remorseful.

What it does require at this proceeding is that the defendant respect the law, respect the process. And from what I can tell, [Bennett] has done that.

I do not believe that, for all of these reasons I've stated in no particular order, but certainly as a whole, that incarceration serves the purpose whereby they, according to the Supreme Court, and they, meaning Mr. Bennett, may not be trusted to possess a firearm without becoming a threat to society. The law

says he can't. But the punishment, I don't think, by incarcerating achieves anything more than just the conviction.[6]

Nevertheless, I did find him guilty, and [the] following sentence will be imposed[.]

N.T. Sentencing, 4/8/22, at 60-64 (citations and capitalization altered). In its opinion denying the Commonwealth's post-sentence motion, the court further explained the reasoning for its deviation from the sentencing guidelines:

1. [Bennett] only had a prior record score of 1;

2. The prior record score came from a crime (involuntary manslaughter) he committed when he was only 19 years of age, and 15 years had passed since that time until [Bennett] was charged herein;

3. At the sentencing hearing, it was apparent to the court that [Bennett] was truly sorrowful and remorseful of his crime that killed his friend . . . ;

4. [Bennett] has live[d] an exemplary life since being released from boot camp at a State Correctional Institute. [Bennett has] been a productive member of society; he completed his college education and is currently a regional account manager in southwestern Pennsylvania for Verizon via a series of promotions;

5. The legislative history of the federal Gun Control Act, as noted repeatedly by the United States Supreme Court, was that "Congress sought to rule broadly – to keep guns out of the hands of those who have demonstrated that they may not be trusted to possess a firearm without becoming a **threat to society**." **Dickerson**, **supra** at 112 (citing **Lewis v. United States**, 445 U.S. 55, 63 (1980) (emphasis added)).

---

[6] We observe that Bennett was convicted of lying on a federal form, not of illegally possessing a firearm. While not an abuse of discretion, we deem it prudent to note the flaw in the court's reasoning that a lesser sentence was warranted, in part, because Bennett did not fit Congress's definition of someone deemed untrustworthy to possess a firearm.

6. Although involuntary manslaughter qualifies as a serious crime for purposes of placing him within the class of persons historically excluded from Second Amendment protections, [Bennett's] lifestyle for the last 15 years does not demonstrate to this court that he is a "threat to society" for sentencing purposes;

7. That the standard range punishment associated with such a conviction was, therefore, ill-suited and would not serve any greater purpose tha[n] a probationary sentence with [EHM].

Trial Court Order, 5/3/22, at 6 (cleaned up).

Upon review of the certified record, it is clear that the trial court considered Bennett's PSI report and the sentencing guidelines before explaining its reasoning for deviating from the sentencing guidelines. *See* N.T. Sentencing, 4/8/22, at 59-60. The sentencing guidelines for materially false written statement, based on Bennett's prior record score of one and offense gravity score of eight, called for a standard range minimum sentence of twelve to eighteen months, with the aggravated and mitigated range minimum sentences being increased or decreased up to nine months, respectively.[7] The trial court sentenced Bennett to twelve months of probation with the first six months on EHM.

The Commonwealth argues that the court improperly found Bennett's lack of remorse or responsibility to be a mitigating factor and did not provide sufficient justification for its downward deviation from the sentencing

_____

[7] We note that the sentencing guidelines are not included in the certified record. The trial court announced the guidelines during the sentencing hearing, *see* N.T. Sentencing, 4/8/22, at 59, and no party has disputed the accuracy of that recitation.

guidelines. Our review of the certified record reveals that the trial court properly considered the PSI report, the sentencing guidelines, and the statutory factors. While at first blush it may appear that the trial court would have imposed a reduced sentence for anyone convicted pursuant to the Gun Control Act, which would unquestionably be an abuse of discretion, in fact, the trial court's explanation reveals that its deviation from the sentencing guidelines was tailored to an examination of the specifics of Bennett's disqualifying involuntary manslaughter conviction and his particularized history thereafter. Indeed, the trial court's deviation from the sentencing guidelines was pursuant to an effort to impose a sentence individualized to Bennett in light of the PSI report, the sentencing guidelines, the nature of the offense, and the particularized needs of Bennett. ***Compare Commonwealth v. Bernal***, 200 A.3d 995, 998 (Pa.Super. 2018) (discussing remand of case for resentencing where the record indicated that the trial judge "had been determined to impose the maximum sentences permitted by statute, regardless of the guidelines" (cleaned up)), ***with Commonwealth v. Walls***, 926 A.2d 957, 967 (Pa. 2007) (indicating sentencing court was permitted to sentence offender outside of the guidelines based upon specific details of the crimes at issue that were not "subsumed within the sentencing guidelines").

Accordingly, we discern no abuse of discretion in the trial court's conclusion that prison time was not necessary in this particular case.

**Conclusion**

Based on the foregoing, we conclude that neither Bennett nor the Commonwealth has raised an issue meriting relief on appeal. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/16/2023